ESTATE OF GEORGE E. RUSSELL, DECEASED, MARIE M. RUSSELL, EXECUTRIX, AND MARIE M. RUSSELL, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 556–64.  October 7, 1966.

*Lenahan O'Connell,* for the petitioners.
*Robert B. Dugan,* for the respondent.

---

OPINION

Dawson, *Judge:* Respondent determined a deficiency in the income tax of petitioners for the year 1959 in the amount of $7,546.71.

Petitioners do not contest respondent's disallowance of a medical deduction of $152.20. Consequently, the only issue for decision is whether petitioners realized ordinary income or capital gain upon the receipt in 1959 of $31,344.56 representing the proceeds of certain annuity contracts.

All of the facts have been stipulated by the parties and are adopted as our findings.

George E. Russell (hereinafter called petitioner) and Marie M. Russell filed their joint Federal income tax return and an amended return for the taxable year 1959 with the district director of internal revenue at Boston, Mass. Subsequent to the filing of the petition herein the petitioner died and the executrix of his estate has been substituted as a party petitioner.

Prior to 1955 and until 1958 petitioner was an employee of Northwestern Leather Co. of Boston, Mass. (hereinafter called Northwestern). Northwestern had a tax-exempt employee pension trust under which annuity contracts were purchased for its employees from John Hancock Mutual Life Insurance Co. Petitioner was a beneficiary of said pension trust.

Because of financial difficulties in 1955, Northwestern terminated the pension trust, and its employees were given three options: (A) To retain the annuity policies in full force and pay the premiums themselves; (B) to surrender the policies for a lump-sum redemption in cash; or (C) to retain the policies without making additional payments and receive a lesser annuity at age 64, the maturity date of the policies. Petitioner elected option (C) and the policies representing his interest in the pension trust were assigned to him in October 1955. Northwestern was liquidated in 1958.

Petitioner retained the annuity policies distributed to him by Northwestern until December 28, 1959, when he became 64 years of age and the policies became payable. His policies were redeemed at that time, and the proceeds of $31,344.56 were paid by the John Hancock Mutual Life Insurance Co. However, the proceeds were left on deposit with the life insurance company. Petitioner received interest on the deposits and retained the right to receive the proceeds at any time.

Under article V of the Northwestern Leather Co. Pension Plan and Trust, contributions were to be made by the employer. Under article II, section 8, of the Northwestern Leather Co. Pension Plan and Trust, the annuity contracts purchased by the trust for the employees were

individual annual premium deferred life annuity contracts, under which the insurance company bound itself to pay an annuity benefit with supplemental cash surrender and death benefits, but without life insurance benefits.

Petitioner contends that the distribution received in 1959 resulted in a long-term capital gain pursuant to the provisions of section 403 (a) (2) (iii), I.R.C. 1954. Respondent, on the other hand, claims that the distribution resulted in ordinary income and that the issue is controlled by section 402, I.R.C. 1954, rather than section 403.

Section 402 (a) (2) provides the rules for capital gains treatment of certain distributions from employees' trusts. Section 403 (a) (2) provides the rules for capital gains treatment of certain distributions with respect to employee annuities. One of the requirements for capital gains treatment under section 402 (a) (2) is that the distribution be made to the distributee "on account of the employee's death or other separation from the service, or on account of the death of the employee after his separation from the service." Section 403 (a) (2) contains substantially the same language.

The parties agree that the distribution of the annuity contracts in 1955 was the result of the employer's financial reverses and that the petitioner continued in the employment of the same employer until its liquidation in 1958. It is also agreed that the distribution of the proceeds of the annuity contracts in 1959 was the result of the contracts maturing and not the petitioner's separation from his employment. Therefore, the respondent contends that petitioner would not be entitled to capital gains treatment under either section 402 or section 403.

Section 402, on its face, governs distributions from qualified employees' trusts, whereas section 403 governs annuity contracts purchased by an employer under a plan which does not employ a trust. Since the distribution of the annuity contracts to petitioner was from a qualified employees' trust, it is clear that the provisions of section 402, rather than those of section 403, apply here.

The capital gains provisions of section 402 (a) (2) apply only when a lump-sum distribution is made from a qualified pension trust because of the employee's separation from the service of the employer by reason of death or termination of the employment relationship. *United States* v. *Johnson*, 331 F. 2d 943 (C.A. 5, 1964). Since the facts here do not bring it within the provisions of section 402 (a) (2), we hold that the distribution to petitioner with respect to the annuities is taxable as ordinary income under section 402 (a) (1).

Section 1.402 (a)–1 (a) (2), Income Tax Regs., provides, and we think correctly, that upon the distribution of an annuity contract from a tax-exempt pension trust, which contract has a cash surrender value

available to the employee by surrendering the contract, such cash value will not be considered income to the employee unless and until the contract is surrendered. The petitioner did not surrender the policies until they matured in 1959, even though he was advised that he could have cashed them in 1955. Consequently, the proceeds received by him in 1959 are taxable in that year.

Petitioner argues that if the distribution to him in 1959 is treated as ordinary income, then he should be taxed under the provisions of section 72(e)(3), I.R.C. 1954, relating to limit on tax attributable to receipt of lump sum. The answer to this argument is that section 402 (a), as it applied to the taxable year 1959, specifically provided that section 72(e)(3) did not apply to distributions from an employees' trust. See section 232(e)(1), Pub. L. 88–272 (Revenue Act of 1964), which was effective with respect to taxable years beginning after December 31, 1963.

While it is true that the petitioner has been the victim of circumstances beyond his control, there is no legal justification, notwithstanding our personal compassion, for giving the law other than its plain meaning. The statute clearly requires death or separation from the service of an employer before allowing an employee favored capital gains treatment with respect to distributions from an exempt employees' trust. It may be, as petitioner maintains, that the result of this case "entails a hardship which Congress never envisaged," but it is not for us to preempt the legislative function. Accordingly,

*Decision will be entered for the respondent.*