ESTATE of Jack A. BENJAMIN, Deceased, John F. Benjamin, Co-Executor and Alice U. Benjamin, Appellees,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellant.

No. 71–1153.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 17, 1972.

Decided June 8, 1972.

Johnnie M. Walters, Asst. Atty. Gen., Tax Div., William L. Goldman, Atty., U. S. Dept. of Justice, Washington, D. C., Meyer Rothwacks, Bennet N. Hollander, Attys., Tax Division, Dept. of Justice, Washington, D. C., for appellant.

Harry Thom, Arthur S. Rollin, Robert L. Stern, Chicago, Ill., for appellees; Mayer, Brown & Platt, Chicago, Ill., of counsel.

Before SWYGERT, Chief Judge, HASTINGS, Senior Circuit Judge, and KILEY, Circuit Judge.

KILEY, Circuit Judge.

The Tax Court decided, 54 T.C. 953 (1970), that a lump payment to the taxpayer,[1] secondary beneficiary under an employees' pension fund annuity contract, is entitled to capital gains treatment. The Commissioner has appealed. We affirm.

Alice U. Benjamin's husband, Jack A. Benjamin, before his death was employed[2] by Uhlmann Grain Company. During Benjamin's employment Uhlmann established a pension plan trust, qualified under 26 U.S.C. § 401(a), for the exclusive benefit of its employees or their beneficiaries. The plan from its inception was funded by purchases of individual annuity contracts for each employee, with premiums paid by contributions of both Uhlmann and the employees. The contract for Benjamin was purchased from Mutual Benefit Life Insurance Company of Newark, New Jersey, on or about November 1, 1945.

In October, 1957, Uhlmann terminated the pension trust plan. The annuity contract, representing Benjamin's entire interest of $28,664.76 in the trust, was assigned to him by the Trustee. On November 1, 1960, Mutual, by virtue of a retention agreement, began the monthly payments to Benjamin of the proceeds of the contract. After receiving four payments, and while still employed by Uhlmann, Benjamin died on February 27, 1961. Taxpayer surrendered the contract during 1961 and received the lump sum payment of $30,606.88[3] which is the subject of this litigation.

Taxpayer in her 1961 income tax returns excluded $5,000.00 from gross income under 26 U.S.C. § 101(b)(2)(B)(i) and reported the balance of $25,312.19 as a capital gains distribution from the Uhlmann pension trust.[4] The Commissioner made a deficiency assessment of $9,838.13 against taxpayer for the year 1961. Her petition for redetermination before us followed.

In the Tax Court taxpayer originally proceeded on the theory that under 26 U.S.C. § 402(a)(2)[5] the 1961 lump sum

---

1. We shall refer to appellees as "taxpayer."

2. During the period relevant here he was vice-president and secretary of Uhlmann.

3. This is the commuted value, under the terms of the retention agreement, of the remaining monthly payments.

4. The total contract proceeds were $31,869.-19. Before his death $1,262.31 was paid to Benjamin. His contribution to the pension trust through payment of premiums on his annuity contract was $1,557.-00.

5. Section 402(a) (2) provides:
   § 402. Taxability of beneficiary of employees' trust
   (a) Taxability of beneficiary of exempt trust.—
   
   \*       \*       \*       \*       \*
   
   (2) Capital gains treatment for certain distributions.—In the case of an employees' trust described in section 401 (a), which is exempt from tax under section 501(a), if the total distributions payable with respect to any employee are paid to the distributee within 1 taxable year of the distributee on account

of the employee's death or other separation from the service, or on account of the death of the employee after his separation from the service, the amount of such distribution, to the extent exceeding the amounts contributed by the employee (determined by applying section 72(f), which employee contributions shall be reduced by any amounts theretofore distributed to him which were not includible in gross income, shall be considered a gain from the sale or exchange of a capital asset held for more than 6 months. Where such total distributions include securities of the employer corporation, there shall be excluded from such excess the net unrealized appreciation attributable to that part of the total distributions which consists of the securities of the employer corporation so distributed. The amount of such net unrealized appreciation and the resulting adjustments to basis of the securities of the employer corporation so distributed shall be determined in accordance with regulations prescribed by the Secretary or his delegate. This paragraph shall not apply to distributions paid to any distributee to the extent

payment was entitled to capital gains treatment. At the Tax Court's invitation taxpayer claimed alternatively that 26 U.S.C. § 403(a)(2) [6] applied to the same effect in her favor. The Tax Court held that § 402(a)(2) did not apply but granted relief under § 403(a)(2). The Tax Court's theory was that although the trusteed plan terminated in 1957, the assignment of the trust annuity contracts to Benjamin and others converted the trusteed plan into a qualified non-trusteed plan so as to entitle taxpayer to capital gains treatment of the 1961 lump sum payment from the qualified non-trusteed annuity plan by virtue of § 403(a)(2).

The Commissioner contends that the Tax Court erred in deciding that there was a conversion from the trusteed to a non-trusteed plan effected by the 1957 assignment of the annuity contract to Benjamin. He claims that under the general rule of either § 402(a)(1) or § 403(a)(1) the lump sum payment is taxable as ordinary income [7] because after the 1957 termination there was no annuity pension plan in existence. No case has been cited or found which decides the precise question presented by the Commissioner's contention.

Prior to 1942 Congress made no provision in 26 U.S.C. § 165 (1952 ed.), the 1939 predecessor of § 402(a)(2), for capital gains treatment of payments from employee pension trusts. Section 162(d) of the Revenue Act of 1942 amended § 165 and introduced capital gains treatment to a distributee's net lump sum payments from employees' trusts on account of the employee's "separation from the service." In the 1954 Code, § 165(b) was rewritten as § 402(a)(2) covering trusteed employee pension plans.[8] In 1954 § 403(a)(2) was also adopted, extending capital gains treatment to non-trusteed employee pension plans. The congressional

such distributions are attributable to contributions made on behalf of the employee while he was an employee within the meaning of section 401(c) (1).

6. Section 403(a) (2) (A) .and (B) provides:

§ 403. Taxation of employee annuities
(a) Taxability of beneficiary under a qualified annuity plan.—

\* \* \* \* \*

(2) Capital gains treatment for certain distributions.—
(A) General rule.—If—
(i) an annuity contract is purchased by an employer for an employee under a plan described in paragraph (1);
(ii) such plan requires that refunds of contributions with respect to annuity contracts purchased under such plan be used to reduce subsequent premiums on the contracts under the plan; and
(iii) the total amounts payable by reason of an employee's death or other separation from the service, or by reason of the death of an employee after the employee's separation from the service, are paid to the payee within one taxable year of the payee,
then the amount of such payments, to the extent exceeding the amount contributed by the employee (determined by applying section 72(f)), which employee contributions shall be reduced by any amounts theretofore paid to him which were not includible in gross income, shall be considered a gain from the sale or exchange of a capital asset held for more than 6 months. This subparagraph shall not apply to amounts paid to any payee to the extent such amounts are attributable to contributions made on behalf of the employee while he was an employee within the meaning of section 401(c) (1).—
(B) Definition.—For purposes of subparagraph (A), the term "total amounts" means the balance to the credit of an employee which becomes payable to the payee by reason of the employee's death or otehr separation from the service, or by reason of his death after separation from the service.

7. The Commissioner concedes that if the Tax Court decision is correct, the taxpayer was allowed to deduct $5,000.00 from gross income in her 1961 income tax report under 26 U.S.C. §§ 101(b) (1) and 101(b) (2) (A).

8. This encapsulated legislative history is taken from Judge Wisdom's opinion for the court in United States v. Johnson, 331 F.2d 943, 945–947 (5th Cir. 1964), where the court considered the question of taxability under § 402(a) (2) of a lump sum payment to an employee from a trusteed plan incident to a change of stock ownership of the corporate employer although the employee continued in employment under the new ownership.

purpose was to correct inequities resulting from capital gains treatment accorded to lump sum distributions from trusteed plans because of separation from service while not granting similar treatment to lump sum distributions from non-trusteed or insurance plans.[9]

■ The general rule is that amounts received by an employee under an annuity are taxable as ordinary income. § 403(a)(1). An exception to the general rule is provided in § 403(a)(2) which allows capital gains treatment of lump sum payments under a plan which meets the requirements of § 404(a)(2).[10] And the taxpayer had the burden of proving that the 1961 lump sum payment comes within the exception. The elements to be proven are (a) that after the 1957 termination of the trusteed pension plan a qualified annuity plan under § 403(a)(2) existed; (b) that the plan was a written program communicated to the employees as required by Treas. Reg. § 1.401–1(a)(2) (1961); and (c) that the annuity plan was established and maintained by Uhlmann as required under Treas. Reg. § 1.401–1(b)(1)(i).

The relevant requirements of § 404(a)(2) are that the plan meet the requirements of § 401(a)(3), (4), (5), and (6). The latter requirements deal in (3) with the minimum employee coverage and minimum span of employment of the annuity plan needed for qualification, in (4) with the need of non-discrimination in favor of officers, etc., in (5) with what classifications are not discriminatory, and in (6) with what in one respect satisfies the time span requirement of § 401(a)(3).[11]

The exception to the general rule in § 403(a)(2)(A) provides that: If

(i) an annuity contract is purchased by an employer for an employee under a plan described in paragraph (1);

(ii) such plan requires that refunds of contributions with respect to annuity contracts purchased under such plan be used to reduce subsequent premiums on the contracts under the plan; and

(iii) the total amounts payable by reason of an employee's death or other separation from the service, or by reason of the death of an employee after the employee's separation from the service, are paid to the payee within one taxable year of the payee,

then capital gains treatment is to be accorded to the net amounts paid under the annuities.[12]

---

9. House Rep. No. 1337, 83rd Cong. 2nd Sess. pp. 43, A 146. Sen.Rep. No. 1622, 83rd Cong. 2nd Sess. p. 54.

10. Section 404(a) (2) provides in pertinent part:

§ 404. Deduction for contributions of an employer to an employees' trust or annuity plan and compensation under a deferred-payment plan

(a) General rule.—

  \*    \*    \*    \*    \*

(2) Employees' annuities.—In the taxable year when paid, in an amount determined in accordance with paragraph (1), if the contributions are paid toward the purchase of retirement annuities, or retirement annuities and medical benefits as described in section 401(h), and such purchase is a part of a plan which meets the requirements of section 401(a) (3), (4), (5), (6),

  .  .  .  .

  \*    \*    \*    \*    \*

11. The stipulation of facts does not disclose the number of Uhlmann employees who were annuitants under the trusteed plan. Apparently there was no question or dispute as to whether, or what part, were not covered. So in this court there is no issue concerning whether there were enough employees in the plan to meet the requirement that at least a certain percentage of the employees be covered. The Commissioner's position is not that the requirements of § 401(a) (3)–(6) were not met to qualify as an annuity plan. His position is that after 1957 there was no qualified annuity plan.

12. This court in Gunnison v. Commissioner of Internal Revenue, 461 F.2d 496 at 499, 1972, stated, on authority of Gordon v. Commissioner of Internal Revenue, 1956, 26 T.C. 763, that "[T]he exception was always strictly construed." However, the Tax Court decision in Gordon does not state that rule express-

■ The facts stipulated before the Tax Court show that the three requirements of § 403(a)(2)(A) are met by the Uhlmann annuities. Uhlmann purchased the annuity contract under a qualified pension plan. Under the plan the annuity contracts were fully paid when assigned to the employees and there would be no refunds. The lump sum payment in 1961 represented "the total amounts payable by reason of" Benjamin's separation from employment by death [13] and it was paid within one taxable year of the payee. We think the Tax Court could reasonably infer that the annuities purchased by Uhlmann for its employees contained in themselves the qualification of an annuity plan contemplated by § 404(a)(2) and § 403(a)(2)(A) upon the termination of the trusteed pension plan in 1957. The stipulated facts formed a basis for a Tax Court inference that the conditions of § 403(a)(2)(A) were met. We conclude that prima facie proof was made that after the 1957 termination of the trusteed pension plan a qualified annuity plan existed under § 403(a)(2)(A).

The question now is whether the plan shown was a written program communicated to the employees as required by Treas. Reg. § 1.401–1(a)(2) (1961).[14] We think that the Tax Court could conclude here also that prima facie proof had been made of these requirements.

■■ It is conceded that no writing beyond the annuity contracts themselves is required by the regulation. We think we must presume that the Uhlmann employees knew generally the terms of the pension trusteed plan, the terms of the annuities included in that plan, and also the terms of a 1955 retention agreement between the Trustee and Mutual which provided several options for beneficiaries. We shall assume, but not decide at this point, that a conversion to a non-trusteed plan was effected by the 1957 termination of the trusteed plan. Under that assumption it seems to us that there had been communicated to the employees everything needed for them to know that the annuities after termination of the trust and plan constituted a new plan in which Uhlmann reserved the right, and agreed to withhold from the employees the right, to request the retention of the proceeds of the annuity contracts. We think that here again there was a basis for the Tax Court to conclude that the annuity plan in existence upon termination of the trusteed plan was a written program substantially communicated to the employees.

■ There remains the question whether taxpayer has met the burden of proving that the annuity plan in existence after the 1957 termination was established and maintained by Uhlmann as required by Treas. Reg. § 1.401–1(b) (1) (i) (1961).[15] Principal reliance for this proof is placed by taxpayer upon the retention agreement made by the pension plan Trustee, under authority of Uhlmann, with the insurer Mutual.

On November 1, 1955, the Trustee and Mutual agreed [16] that Mutual, upon request of the Trustee, was to retain the proceeds of the annuity contracts at $2\frac{1}{4}\%$ until November 1, 1960, or until

---

ly, and in that case the court was construing § 402 and decided that taxpayer was not entitled to capital gains treatment because the lump sum payment was not made on account of her father's separation from the service in 1949, but on account of his death in 1950.

13. The assignment of the annuity to Benjamin in 1957 was not distribution of the "total amounts payable" under § 403 (a) (2) (A) (iii) since Benjamin was not then separated from service.

14. Treas.Reg. § 1.401–1(a) (2) (1961) provides in pertinent part:

A qualified pension, profit-sharing, or stock bonus plan is a definite written program and arrangement which is comunicated to the employees. . . . We agree with the Commissioner that the Tax Court erred in finding that the regulation did not cover annuity plans.

15. It is conceded by the Commissioner that it is possible for a trusteed plan upon termination to become a non-trusteed plan. For the converse see Rev. Rul. 55–427.

16. Pursuant to an amendment to the pension trust authorizing the agreement.

the annuitant's death. The right of the employee to make such a request was expressly withheld. Presumably the retention agreement covered all annuitants.

We think a letter written by Uhlmann to Mutual on March 17, 1958, justified an inference that Uhlmann, despite the termination of the trusteed plan in 1957, exercised a control over the annuities sufficient to show that its prior interest in its employees under the trusteed plan carried over into the annuities. The 1958 letter was written to Mutual to serve the interest of the "participants" in the "certificates which we now hold." [17]

The letter was written to modify the 1955 retention agreement.[18] It told Mutual of Uhlmann's attorney's opinion that the 1957 assignment of the annuities could not be considered taxable income to "participants" if the only annuity option was monthly payments over a ten year period and the "participant" does not have the right to withdraw. It further stated "the certificates which we now hold" provide that the "right of withdrawal or commutation is withheld from the participant," but that with respect to Benjamin and four other named "participants" the right to withdraw before November 1, 1960, should be transferred in the agreement from Uhlmann to those "participants" named.

In rejecting an earlier proposal of Mutual that payments of the annuity benefits installments begin November, 1957, the letter stated that this was not in the best tax interests of "participants" and "this was the reason that the funds were left" with the insurance company for the five year period.

The retention agreement was not rescinded when Uhlmann terminated the trust in 1957. The effect of the agreement was to enable Uhlmann through the "Trustee" to effectually direct until November, 1960, how the annuitant should be paid the benefits. The record discloses that the restriction on the right of Benjamin, and the four other employees named in the March, 1958, letter, was removed. We assume that the removal ended the Uhlmann right, against Benjamin, in Benjamin's annuity. Nevertheless the Tax Court could reasonably infer that the interim retained right of the "Trustee" was the nexus between the terminated trusteed plan and the converted qualified annuity plan.

The decision in Estate of Russell, 47 T.C. 8 (1966), does not control or preclude our decision. In *Russell* the decision rested on the application of § 402. The court found that the provisions of § 403 did not apply. The Tax Court held that the facts in *Russell* did not bring Russell's claim under the provisions of § 402(a)(2) and that the distribution to Russell from the trusteed plan there— according to his option to accept the annuity contract and retain it without additional payments and to receive a lesser annuity at maturity of the contract— was not on account of Russell's separation from the service of his employer by reason of death or termination of employment. Here Benjamin's separation from service was by reason of his death.

■■ We are not impressed by the Commissioner's argument that the trusteed plan was not continued after 1957 as an annuity plan because the annuity contract did not provide "systematically for the payment of definitely determinable benefits" to Benjamin for life, required by Treas. Reg. § 1.401–1(b)

---

17. The briefs do not question that the annuities were assigned to the employees in 1957. It may be the contracts were not delivered in view of the retention agreement. Presumably Uhlmann held at this time all the annuities that were in the trust in 1957.

18. The modification was made on request of "Trustees, Uhlmann Grain Company and Others Pension Trust" and the right to withdraw transferred to the participants. The request was "concur[red]" in by signatures of Benjamin and his wife. The fact that the modification was made by the "Trustees" does not militate against a finding that the trusteed plan was terminated. It is clear that the "Trustees" were carrying out Uhlmann's purpose in the modification.

(1)(i) (1961), and the contract did not contemplate or was not made in contemplation of factors such as years of service and compensation. It is true that each annuity did not state systematically the span of service and compensation paid, with the details of the trusteed plan. But the annuities had assimilated those details when in that plan. And the amounts payable under each contract were based upon the formula used in the trust to establish the amounts payable and thus inhered in the annuities. There is no significance to the fact that Uhlmann made no contributions after 1957. The annuities were fully funded and employee interests had vested at that time.

■ We conclude that the strict construction of the exception in § 403 (a)(2) would not be offended by drawing the reasonable inference justified by this record that Uhlmann maintained a substantial control of the annuities after 1957 and that the previous termination of the trusteed pension plan was transformed thereby into a qualified non-trusteed plan. The court was not required to have direct evidence of Uhlmann's intention to maintain the annuity plan. It is sufficient if the circumstances justify his conclusion. And we think it follows that if Uhlmann maintained the plan it had also established the plan.

■ We conclude that the Tax Court had a basis for an inference that when the trusteed plan was terminated in 1957 a conversion to a non-trusteed plan was made. We hold therefore that the Tax Court did not err in concluding that taxpayer was entitled to capital gains treatment for the lump sum payment received in 1961.

For the reasons given, the decision of the Tax Court is affirmed.

SWYGERT, Chief Judge (dissenting).

In my opinion the Tax Court erred in ruling that section 403(a)(2) of the Internal Revenue Code applies to the facts of this case. In so ruling that court observed, "The annuity plan represents a mere continuation, in non-trusteed form, of the preexisting plan and as a result bears close resemblance to the prior plan." Therein lies the error. No qualified annuity pension plan existed after 1957. All that remained at the time of the 1961 payment was the annuity contract (as distinguished from an annuity pension plan) which had been distributed to John F. Benjamin at the time the Uhlmann Grain Company terminated its pension plan in 1957. The lump sum payment received by Benjamin's widow in 1961 was realized from the annuity contract and therefore should be treated as ordinary income under sections 402(a)(1) and 72 of the Code.

In 1945 Uhlmann established a pension plan, in trusteed form, which qualified for tax exempt status under the applicable provisions of the 1939 and 1954 Codes. From its inception the plan was funded by the purchase of individual annuity contracts for each participating employee. Benjamin's annuity contract was purchased from the Mutual Life Insurance Company of Newark, New Jersey.

Under the pension plan, Benjamin's retirement date was November 1, 1955. On that date, the trustees entered into a retention agreement with the insurance company whereby the insurance company was to retain the proceeds from Benjamin's annuity policy, with interest at $2\frac{1}{4}$ percent, for five years or until his death. At the end of that period, a monthly annuity was to commence pursuant to one of the settlement options under the policy. The trustees retained the rights to withdraw the annuity proceeds retained by the company or to commence the annuity payments in accordance with one of several settlement options at any time prior to the expiration of the five-year retention period.

In October 1957, the Uhlmann Company terminated the pension trust. The Internal Revenue Service issued letter rulings, stating that this termination would not adversely affect the prior

qualified status of the plan or the tax exempt status of the trust.

Pursuant to the termination of the trust, the annuity contracts which had been purchased for the participating employees were distributed to them. Benjamin thereafter modified the retention agreement so as to grant him the power to request the commencement of the monthly annuity payments prior to November 1, 1960. He did not exercise this power, and, on November 1, 1960, the insurance company commenced payment of the monthly annuity. Benjamin died on February 27, 1961, after receiving four monthly payments. His widow was the secondary beneficiary under the annuity contract. Several months after his death, she surrendered the contract to the insurance company in exchange for a lump sum payment.

Capital gains treatment is accorded certain lump sum distributions from pension plans administered either by an employee's trust under section 402 (a)(2), or by an insurance company pursuant to a nontrusteed annuity plan under section 403(a)(2). The principal question on this appeal is whether the 1961 payment to Mrs. Benjamin qualifies for capital gains treatment under either section. I agree with the majority that section 402(a)(2) is inapplicable since the trust terminated in 1957. Section 402(a)(2) requires that the payment amount to the "total distributions payable" under the trust and that it be "paid to the distributee within 1 taxable year of the distributee on account of the employee's death or other separation from the service, or on account of the death of the employee after his separation from the service." Upon termination of the pension trust in 1957, each employee, including Benjamin, received his entire interest in the trust in the form of annuity contracts. The 1957 distribution, however, does not come within section 402(a)(2) since it was not a distribution of the proceeds owed Benjamin under the plan nor was it occasioned by his death or separation from service. The 1961 lump sum payment, which was triggered by Benjamin's death, fails to qualify as the "total distributions payable" under the trust since after 1957 there was nothing left to distribute.

I disagree with the majority's holding that section 403(a)(2) is applicable. Code sections 401 through 404 which grant tax-exempt status to certain kinds of pension plans are precisely drawn and should be narrowly construed. The basic rule is that amounts distributed to an employee under an exempt plan are taxable as ordinary income. Capital gains treatment is the exception and is accorded only those lump sum distributions that meet the specific requirements of sections 402(a)(2) and 403(a)(2). See, e.g., Gunnison v. Comm'r of Internal Revenue, 461 F.2d 496 (7th Cir., 1972). At the very minimum the distribution must be made pursuant to a pension plan of the kind described in section 401(a). I can find no plan, trusteed or nontrusteed, continuing beyond 1957. In general, section 401(a) of the Code and Treasury Regulation section 1.401–1(b)(1)(i) place the burden on the employer to establish a qualified plan and to maintain its qualified status. I cannot believe that in the instant case assignment of the annuity contracts to the individual employees— without more—meets this test. Indeed, Uhlmann's 1957 letter to the Internal Revenue Service specifically stated that it was terminating not only the pension trust but the pension plan as well. The letter indicated Uhlmann's concern about the effect of the termination upon the plan's previous qualification. It did not announce the continuation of the plan in nontrusteed form or seek a determination of its continued qualification.

I do not agree with the majority's construction of the 1958 letter from Uhlmann to the insurance company. The letter suggests a modification of the 1955 retention agreement and describes the tax consequences to the participants. The retention agreement, however, had been executed by Trustees of the plan and could be altered only with their con-

sent. This was so even after 1957 since the retention agreement was not part of the annuity contracts that had been distributed to the participants in that year. Later in 1958, the Trustees did modify the agreement along the lines suggested in the letter. No one argues that the Trustees' actions indicate the continuation of the pension trust after 1957. Rather, the majority takes the Trustees' actions as evidence of Uhlmann's post-1957 role in maintaining a nontrusteed pension plan. I cannot accept this interpretation since I believe that it renders meaningless the Code's distinction between sections 402(a)(2) and 403(a)(2).

Continuation of the plan may also be evidenced by the provisions of the annuity contract—independent of the employer's actions. In the instant case, the annuity contract was the funding mechanism for the overall pension plan and contained only a skeletal rendering of the original plan. There were, for example, no provisions outlining the requirements for eligibility, benefits, or employee contributions. Thus, since I find that no qualified annuity pension plan existed in 1961, the 1961 distribution from the annuity contract did not qualify for capital gains treatment under section 403(a)(2).