**Rosann S. BERRY, Beneficiary of Robert E. Berry**

v.

**CADENCE INDUSTRIES CORPORATION et al.**

Civ. A. No. 79–2935.

United States District Court, E.D. Pennsylvania.

Dec. 17, 1982.

Robert Stephen Berry, Morgan, Lewis & Bockius, Philadelphia, Pa., for plaintiff.

Walter S. Jenkins, Philadelphia, Pa., for Cadence Industries.

Herbert G. Keene, Jr., Philadelphia, Pa., for Cadence Industries, Curtis Circulation Co., G.B. McCombs, Stuart J. Freedman and Seymour Spiegel.

Hugh J. Hutchison, Philadelphia, Pa., for Equitable Life Assur. Soc. of the U.S.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

Plaintiff, Rosann S. Berry,[1] has brought this action alleging in two counts violations by defendants of the Employee Retirement Income Security Act (ERISA), invoking jurisdiction under 29 U.S.C. § 1132(e). Plaintiff alleges first that defendants, in violation of 29 U.S.C. §§ 1021, 1022, 1055, and 1061, failed to disclose to her husband, Robert Earl Berry, now deceased, his opportunity to select an early survivor annuity which,

following Mr. Berry's death, would have provided plaintiff with benefits under a pension plan of the defendants. Second, plaintiff alleges a breach of fiduciary responsibility by the defendants, in violation of 29 U.S.C. §§ 1104 and 1105, in their attempt, in July 1970, to terminate a pension plan in which Mr. Berry was a participant and in their diversion during the course of this transaction of a portion of the assets of the pension fund to their own use. Plaintiff also appends a state law claim of breach of fiduciary duty.

Plaintiff claims that as a result of defendants' actions she was deprived of a survivor annuity attributable to her husband's pre-1970 service with defendants, as well as of a *pro rata* share of the pension funds wrongfully diverted by defendants. Plaintiff seeks payment to her of these funds by defendants, as well as attorney's fees. Plaintiff also asks the Court to order restitution for any unlawful depletion of the pension fund, and to order the Internal Revenue Service to take action to adjust retroactively the tax-exempt status of any trusts administering the plans covering Mr. Berry's years of service, should the Court find these trusts were terminated in a manner which breached defendants' fiduciary responsibilities to Mr. Berry and his beneficiaries.

Defendants have asserted that this Court lacks jurisdiction over this action because the plan under which the plaintiff seeks benefits terminated in July 1970, some four and one-half years before ERISA became effective on January 1, 1975, and because the acts of which plaintiff complains all took place before this effective date as well. Both sides have submitted evidentiary material on this question, including affidavits, depositions, and answers to interrogatories, and the case is now before the Court on cross-motions for summary judgment. Fed. R.Civ.P. 12(c), 56.

■ Since plaintiff's claims arise under ERISA, and plaintiff's invocation of ERISA

---

1. Plaintiff has died since the institution of this action, and although no formal substitution has been made we assume the action is now being prosecuted on behalf of her estate.

jurisdiction is not frivolous or a mere matter of form, this Court has subject matter jurisdiction under 29 U.S.C. § 1132(e). *Lentino v. Fringe Employee Plans, Inc.,* 611 F.2d 474, 479 (3d Cir.1979); *See Hagans v. Lavine,* 415 U.S. 528, 537–38, 94 S.Ct. 1372, 1379, 39 L.Ed.2d 577 (1974); *Gagliardi v. Flint,* 564 F.2d 112, 114 (3d Cir.1977), *cert. denied,* 438 U.S. 904, 98 S.Ct. 3122, 57 L.Ed.2d 1147 (1978); *Valente v. Dennis,* 437 F.Supp. 783, 785 (E.D.Pa.1977); C. Wright, Law of Federal Courts 72 (3d ed. 1976). This jurisdiction "is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover." *Hagans,* 415 U.S. at 542, 94 S.Ct. at 1381, quoting *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). While we have determined that plaintiff's claims fail to state a cause of action under ERISA, at the time plaintiff's suit was filed there was a colorable federal claim, and hence this Court properly acquired jurisdiction. *Weaver v. Marine Bank,* 683 F.2d 744, 747 (3d Cir.1982). Accordingly, rather than dismiss this action for want of subject matter jurisdiction, we will enter summary judgment for defendants on both counts of plaintiff's amended complaint which allege violations of ERISA.

In deciding defendants' motion for summary judgment, we must determine whether any disputed issues of material fact exist which would preclude entry of judgment in defendants' favor. *Hollinger v. Wagner Mining Equipment Co.,* 667 F.2d 402, 405 (3d Cir.1981). As to issues of fact, all reasonable inferences from the underlying facts contained in the evidential sources submitted to us must be drawn in favor of the plaintiffs. *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). Whenever defendant relies upon affidavits, depositions or answers to interrogatories, plaintiff must come forward with affidavits, depositions, or answers to interrogatories sufficient to contradict defendants' showing. *Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 158–61, 90 S.Ct. 1598, 1608–10, 26 L.Ed.2d 142 (1970); Fed.R.Civ.P. 56(e).

On the basis of the affidavits, depositions and answers to interrogatories submitted by the parties, the uncontested facts can be summarized as follows:

Mr. Berry worked for the company known at the time relevant here as Curtis Circulation Company (Curtis) for thirty-seven years, until his death in 1978. At the time of his death he was married to the plaintiff, who died in 1979.

In June 1968, defendant Curtis purchased the assets of the former Curtis Circulation Company, then known as C.C. Corporation. Curtis is a subsidiary of defendant Cadence Industries Corporation (Cadence). At the time of this purchase, the employees of C.C. Corporation, including Mr. Berry, were participants in the Curtis Publishing Company Pension Plan and Trust (Publishing pension trust). As a part of the acquisition, Curtis acquired the right to have assets of the Publishing pension trust allocable to Curtis' employees transferred to its own pension trust. This transfer of assets was made on July 6, 1970 to the trustees of the Curtis Circulation Company Pension Plan and Trust (Curtis pension trust), which had been established as of January 1, 1970 as a vehicle to receive the transferred assets. At about the same time, a similar trust (Perfect pension trust) was established for employees of the Perfect Subscription Company (Perfect), like Curtis a subsidiary of Cadence. (Freedman affidavit ¶¶ 3–7). On July 13, 1970, the trustees of Curtis pension trust obtained the opinion of counsel that they had the authority to terminate the Curtis pension trust. At the same time, the Curtis Board of Directors authorized the trustees of the Curtis pension trust to pay to defendant Equitable Life Assurance Society of the United States (Equitable) a sum of money required to fund an insured pension plan agreement between the trustees and Equitable, intended to provide insured pension benefits to Curtis employees. The Board further resolved that "upon execution of the aforementioned insured Pension Plan and funding of said Plan by the Trustees, the Company's existing Pension Plan and Trust shall automatically be ter-

minated and the Trustees, after satisfaction of all other liabilities, are directed to return to the Company the remaining portion of the funds in the Trust which represent the actuarial surplus in the Trust attributable to the Company ..." Termination of the Curtis pension trust was to be effective July 1, 1970. (Freedman affidavit ¶ 7; Board resolution, Defendants' Exhibit E).

Upon passage of this resolution, the trustees paid to Equitable over two million dollars to secure a group annuity contract in order to provide benefits to employees covered by the Curtis pension trust which, according to the Board's resolution, was now terminated. (Dep. of S. Freedman 51, Freedman affidavit ¶ 7(f)). The payment was made before Equitable had finalized the contract to preliminary estimates. Subsequent payments were also made to Equitable pursuant to this contract. The contract, between Equitable and the "Trustees of the Pension Plan and Trust of Perfect Subscription Co. and Curtis Circulation Co." (trustees) was issued October 19, 1971, retroactively effective as of July 13, 1970, as Group Annuity Contract AC2538 (annuity contract).

In December 1972, participants in the Curtis pension trust, including Mr. Berry, received certificates representing their entitlement to a monthly annuity payment equal to the amount shown on the face of the certificate beginning at their normal retirement dates, which in Mr. Berry's case was January 1, 1981. Payments beginning at optional retirement dates were to be actuarially adjusted downward. The optional retirement date was defined as the first day of any calendar month after July 13, 1970 within 10 years of the participant's normal retirement date. Nothing in the terms of the certificate or in the annuity contract provided for any increase in the stated monthly annuity benefit on account of service beyond June 30, 1970, or on account of any payments made by the employer after that date. Moreover, the contract provided for payment of benefits only to participants in the Curtis pension trust and the Perfect pension trust who were alive on July 13, 1970 and who were report-ed by the trustees for an annuity benefit before that date (§ 1.02).

On or about December 23, 1970 Curtis employees were notified by letter that the Curtis pension trust had been terminated as of June 30, 1970, and that funds had been deposited with Equitable to cover the "vested pension rights" of employees as of June 30, 1970. Employees were given statements of their "fully vested—nonforfeitable" benefits under the "terminated plan". Employees were told these amounts were "guaranteed". The statement also showed a calculation of benefits these employees would receive under a "New Plan—effective July 1, 1970", but indicated that the new plan had not yet been approved by the company. (Defendants Exhibit G). According to the deposition testimony of Mr. Freedman, a trustee of the Perfect and Curtis pension trusts, the "new plan" was an interim plan to assure employees that their service would be credited while a new plan was formulated. The Equitable annuity contract, based on the terminated plan, did not cover post-1970 service. (Freedman Deposition pp. 74, 99–104).

Effective as of January 1, 1975, Cadence established the Cadence Industries Corporation Employees' Retirement Plan (Cadence plan), which covered Curtis employees, who were granted credit for service with the company back to July 1, 1970. Plaintiff, prior to her death, received a joint and survivor annuity of $13.21 per month under the provisions of this plan, covering her husband's service from July 1, 1970 to his death. Plaintiff received no payments from the annuity contract as defendants maintained that she was entitled to none under its terms.

Plaintiff contends that the transactions in 1970 by Curtis and the trustees were not a termination of the pension plan in effect for Curtis employees at the time, but rather a change in the method of payment of benefits under the plan, constituting an amendment to a continuous and integrated plan maintained by the defendants which covered the entire period of Mr. Berry's

service with Curtis. Hence, plaintiff contends, the requirements of ERISA apply to Mr. Berry's pre-1970 service as well as his post-1970 service. As a result, Mr. Berry should have been permitted to elect an "early survivor annuity" based on his service prior to 1970, and disclosure should have been made to him of his ability to elect such an annuity and of the consequences of his failure to do so.[2]

Defendants contend that the Curtis plan was terminated as of July 1, 1970, and that it ceased to be maintained by the employer at that time under the meaning of 29 U.S.C. §§ 1002(2), 1003(a).[3] Administration of the annuity contract by the trustees of the Perfect and Curtis pension trusts as its contract holders does not, defendants contend, constitute maintenance of a plan under these sections. As a result, the plan is not subject to the requirements of ERISA, which became effective four and one-half years later, on January 1, 1975. Further, defendants contend that all of the wrongful acts of which plaintiff complains in connection with the termination of the plan took place prior to January 1, 1975 and hence cannot provide a basis for an ERISA claim. Finally, defendants contend that even if they are held to have maintained the Curtis pension trust as of January 1, 1975, the joint and survivor annuity provision upon which plaintiff relies would not be applicable to the plaintiff, since it would apply only if Mr. Berry were an "active partici-

pant" in the plan as of January 1, 1975, that is, one "for whom benefits [were] being accrued under the plan on his behalf." 29 U.S.C. § 1055(i)(2); Treasury Reg. 1.401(a)—11(f). We find all of these arguments by defendants to be well taken under the facts of this case.

The ERISA statutory scheme makes clear that the Act is not to apply to acts, omissions or circumstances which arose before ERISA's effective date of January 1, 1975. 29 U.S.C. § 1144(b)(1); *Reuther v. Trustees of the Trucking Employees of Passaic and Bergen County Welfare Fund,* 575 F.2d 1074, 1077–78 (3d Cir.1978). *See E.I. Malone v. White Motor Corp.,* 435 U.S. 497, 499 n. 1, 98 S.Ct. 1185, 1187 n. 1, 55 L.Ed.2d 443 (1978) ("Because ERISA did not become effective until January 1, 1975, and expressly disclaims any effect with regard to events before that date, it does not apply to the facts of this case.") The fact that Congress expressly did not make ERISA retroactive precludes its applicability if plaintiff's cause of action arose before January 1, 1975 or arises from any act or omission occurring before 1975. *Cowan v. Keystone Employees Profit Sharing Fund,* 586 F.2d 888, 891 (1st Cir.1978); *Gordon v. ILWU–PMA Benefit Funds,* 616 F.2d 433, 437 (9th Cir.1980); *Collins v. Trustees of Local 478,* 487 F.Supp. 520 (D.N.J.1980). Moreover, ERISA is not made applicable by a plaintiff's assertion that a breach of fiduciary

---

**2.** Plaintiff apparently relies in this argument on 29 U.S.C. § 1055(c)(2), which reads as follows:

(2) A plan does not meet the requirements of this subsection unless, in the case of such election, the payments under the survivor annuity are not less than the payments which would have been made under the joint annuity to which the participant would have been entitled if he had made an election under this subsection immediately prior to his retirement and if his retirement had occurred on the date immediately preceding the date of his death and within the period within which an election can be made.

**3.** Section 1002(2) provides:

(2) The terms "employee pension benefit plan" and "pension plan" mean any plan, fund or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or

by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program—

(A) provides retirement income to employees, or

(B) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond, regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan. Section 1003 provides, with certain exceptions *not here relevant,* that the subchapter of ERISA dealing with protection of employee benefit rights, upon which plaintiff's contentions are based, shall apply to any employee benefit plan if it is *established or maintained* by any employer engaged in commerce. (emphasis added).

duty arising out of acts occurring before the effective date of ERISA constitutes a continuing breach. *Martin v. Bankers Trust Company,* 565 F.2d 1276, 1278–79 (4th Cir.1977); *Collins,* 487 F.Supp. at 525. In expressly refusing to make ERISA non-retroactive, Congress meant to prevent the past conduct of pension plan fiduciaries and contributors from being judged retroactively under the standards established by ERISA simply because the conduct generates consequences subsequent to ERISA's effective date. *Quinn v. Country Club Soda, Inc.,* 639 F.2d 838, 841 (1st Cir.1981).

█ It is clear from the above that plaintiff's claim for violation of defendants' fiduciary duties does not state a claim under ERISA. All of the acts which plaintiff alleges constituted such a breach were a part of or immediately subsequent to the Curtis Board's resolution to terminate the Curtis pension trust, and occurred well before January 1, 1975. These include the decision to terminate itself, the return of funds representing "actuarial surplus" from the pension fund to Curtis, and the alleged overvaluing of assets and undervaluing of liabilities in determining the amount of that surplus.

█ By the same token, plaintiff can maintain no claim for any joint and survivor annuity or "early survivor annuity" under the Curtis pension trust unless she can show that this plan was maintained by Curtis as of January 1, 1975. *Trippet v. Smith,* 592 F.2d 1112 (10th Cir.1979). In this case, there is no genuine issue of material fact which prevents us from determining that the Curtis plan was not maintained as of that date. Hence, this plan was not subject to the requirements of ERISA, and plaintiff's claim that a survivor annuity was wrongfully denied her under the pension trust fails to state a claim under ERISA.

The undisputed facts in this case show that the Curtis Board of Directors resolved to terminate the Curtis pension trust, and to purchase an annuity contract from Equitable in order to pay the employees covered by that plan the benefits which they had accrued as of June 30, 1970. This contract was purchased, and each employee covered by the Curtis plan received a certificate stating the fixed amount of benefits to which he was entitled for his service under that plan. The remainder of the trust assets, following the purchase of the contract, were returned to the employer. Following these transactions, no assets remained in the trust. (Freedman Deposition 50–51).

The trustees' duties as contract holders of the group annuity contract with Equitable did not constitute maintenance of a pension plan continuing until January 1, 1975. The annuity contract was merely a method of distributing to the employees covered by the terminated plan the benefits they had accrued under this plan. No credit was given under the contract for service beyond June 30, 1970, and no employees who were not covered by the plan as of the time of its termination were eligible to receive benefits under the contract (annuity contract §§ 1.01, 2.02, 3.01).

The fact that only employees covered by the terminated plan were to receive payments under the annuity contract does not, as plaintiff asserts, indicate that the plan itself continued to be maintained by the employer, but only shows that payments under the contract were to be made only to those who had accrued the benefits it was intended to pay. Neither does the fact that the trustees as contract holders were enabled to deal directly with Equitable under § 4.13 of the annuity contract indicate continued maintenance of the pension plan and trust by Curtis. The purpose of this section is merely to insure that Equitable's rights and duties under the annuity contract are determined by the contract itself, and not by the terminated trust.

The Tenth Circuit, in *Trippet, supra,* considered a question substantially similar to that in the present case, and held that a terminated plan, the corpus of which is in the process of liquidation and distribution, is not "maintained" by an employer, and hence is not a plan as contemplated by ERISA. The *Trippet* court stated that the plan at issue did not continue in existence as an operating plan since no employer con-

tributions had been made after the date the company's Board had resolved to terminate the plan, and since persons employed by the company following the termination had no right of participation. *See Federal Deposit Ins. Corp. v. Marine Nat'l Exchange Bank,* 500 F.Supp. 108, 111–12 (E.D.Wis.1980) (funds held in trust for the purpose of liquidating the assets of a pension plan do not constitute an employee pension benefit plan under ERISA).

In the present case, as in *Trippet,* the employer resolved to terminate the pension plan well before the effective date of ERISA, and no persons employed following this termination were eligible to participate in the benefit distribution. Curtis did make certain payments to Equitable with respect to this plan following the termination of the pension trust and the purchase of the annuity contract. Plaintiff contends that these payments, and certain adjustments in the benefit levels and the number of employees covered, indicate that the plan was maintained beyond the date of the termination. Plaintiffs have offered no evidentiary matter, however, to counter the deposition testimony of trustee Freedman that these payments and adjustments were necessary to correct errors in the actuarial assumptions upon which the initial payment to Equitable was made. (Freedman Deposition 53–62). There is no evidence that these adjustments represented contributions by Curtis for service after June 30, 1970, or represented coverage of additional employees who were not merely receiving the benefits to which they were entitled under the terminated plan. Moreover, all of the adjustments to which plaintiff refers occurred well before January 1, 1975.

Plaintiff contends that the disclosure to Curtis' employees of their benefits under the terminated plan and under a new plan on a single statement indicates the existence of one continuous plan covering both pre-1970 and post-1970 service. (Defendants Exhibit G). However, as has been noted, the statement clearly separates benefits under the terminated plan, which are said to be vested, and any benefits which the employee would receive under the new plan, which the statement itself indicates had not yet been approved. Moreover, the deposition testimony of Trustee Freedman that attempts were made to insure that payments under the annuity contract were no less than those to which the participants were entitled under the terminated plan does not indicate that the annuity contract was itself a pension plan which was maintained under the same terms as the terminated plan, but only shows that the annuity contract was designed to pay out all of the benefits to which the Curtis employees were entitled with respect to their service prior to June 30, 1970.

Plaintiff contends that this Court should follow the holding of *Estate of Benjamin v. Commissioner of Internal Revenue,* 465 F.2d 982 (7th Cir.1972), in which a divided panel of the Seventh Circuit held that an employer's assignment of trust annuity contracts over which it maintained substantial control to its employees transformed a previously terminated trusteed pension plan into a non-trusteed plan which qualified for favorable tax treatment under the Internal Revenue Code. Even were the Court to determine that the holding in this tax case is relevant to the existence or nonexistence of the substantive rights and duties of ERISA, the Court is more persuaded by the reasoning of the dissent in *Benjamin,* which would have held that an annuity contract which was merely a funding mechanism for a terminated pension plan, and included no provisions outlining the requirements for eligibility, benefits, and contributions, was not a qualified pension plan within the meaning of the Internal Revenue Code. 465 F.2d at 991. The Equitable annuity contract provides only the most skeletal provisions concerning eligibility for benefits, which are determined by eligibility under the terminated plan, and contains no provision at all for contributions by either the employer or the employees. The terms of the annuity contract indicate clearly that it is simply a vehicle for distributing benefits vested under the terminated plan, and not a plan in itself. For all of the above reasons, we hold that the Curtis pension

trust was not "maintained" within the meaning of ERISA as of January 1, 1975 and that the requirements of ERISA were thus not applicable to it.[4]

■ Finally, this Court notes that it has no jurisdiction under ERISA or otherwise to entertain plaintiff's request for an order that the Internal Revenue Service re-adjust the tax-exempt status of any plan maintained by the defendants. *Cowan,* 586 F.2d at 890 n. 3.

For all of the above reasons, plaintiff has failed to state a claim under ERISA. Therefore, plaintiff's motion for partial summary judgment is denied and judgment will be entered for defendants on plaintiff's ERISA claims.

■ There remains the question of the proper disposition of plaintiff's pendent state law claim.

In *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Supreme Court described those situations in which it is proper for a federal court to exercise pendent jurisdiction. Federal courts have the constitutional *power* to exercise pendent jurisdiction when the state and federal claims derive from a common nucleus of operative fact, such that the plaintiff would ordinarily be expected to try them all in one judicial proceeding, and when the federal claim has sufficient substance to confer subject matter jurisdiction on the court. 383 U.S. at 725, 86 S.Ct. 1130. Even if these constitutional requirements are met, the court has broad discretionary powers to decline pendent jurisdiction after considering judicial economy, convenience, fairness to the parties, and comity. *Id.* at 726, 86 S.Ct. 1130.

*Lentino v. Fringe Employee Plans, Inc.,* 611 F.2d 474, 478 (3d Cir.1979). *See Sparks v. Hershey,* 661 F.2d 30, 33 (3d Cir.1981). When a plaintiff asserts a sufficiently substantial, non-frivolous federal question, so as to vest the district court with subject matter jurisdiction, the district court has discretion to exercise or decline pendent jurisdiction upon analysis of the factors set forth in *Gibbs* and *Lentino. Shaffer v. Board of School Directors,* 687 F.2 d718, 723 (3d Cir.1982); *Kerry Coal Co. v. United Mine Workers,* 637 F.2d 957 (3d Cir.1981), *cert. denied,* 454 U.S. 823, 102 S.Ct. 109, 70 L.Ed.2d 95 (1981); *Norris v. Frame,* 585 F.2d 1183, 1189–90 n. 18 (3d Cir.1978); *Pitrone v. Mercadante,* 572 F.2d 98, 100 (3d Cir.1978), *cert. denied,* 439 U.S. 827, 99 S.Ct. 99, 58 L.Ed.2d 120 (1978); *Nedd v. United Mine Workers of America,* 556 F.2d 190, 201–02 n. 18 (3d Cir.1977), *cert. denied,* 434 U.S. 1013, 98 S.Ct. 727, 54 L.Ed.2d 757 (1978). Upon analysis, we have concluded that the interests of "judicial economy, convenience, fairness to the parties, and comity" will be best served by declining to exercise our pendent jurisdiction over plaintiff's state law claim.

Since there no longer remains a viable federal cause of action to be tried in this Court, proceedings in the state court will not be duplicative of any proceedings here, nor will the plaintiff be deprived of any right to try all of his outstanding claims against the defendants in a single lawsuit. The Supreme Court has stated that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

---

4. Even assuming that ERISA were applicable to this action, defendants appear to be on solid ground in arguing that the provision of ERISA on which plaintiff relies in arguing her entitlement to a joint and survivor annuity is inapplicable to the plaintiff because Mr. Berry was not accruing benefits under the plan as of January 1, 1976. *Lauck v. International Union, United Mine Workers of America Pension Trust,* 655 F.2d 423 (D.C.Cir.1981); *See Baker v. Otis Elevator Co.,* 609 F.2d 686, 690 n. 6 (3d Cir.1979).

Moreover, even had Mr. Berry elected a joint and survivor annuity under the plan, under the terms of the contract his wife would not have been entitled to receive a survivor annuity because Mr. Berry was not living on his annuity commencement date. ERISA does not require payment of benefits under such circumstances. *Hernandez v. Southern Nevada Culinary and Bartenders Pension Trust,* 662 F.2d 617 (9th Cir.1981).

We note as well the Supreme Court's admonition in *Gibbs* that a federal court avoid "needless decisions of state law" both "as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of the applicable law." *Id.* This consideration is particularly applicable in the present case where the parties have not referred us to any Pennsylvania cases, nor has the Court discovered any, which would be determinative of the issue involved in plaintiff's state law claim. There may also be a question as to whether the applicable statute of limitations bars any recovery by the plaintiff. We deem it best, in the interests of fairness and comity, that these potentially difficult and unsettled issues of state law, touching on questions of fiduciary duty in which the state undoubtedly has a strong interest, be determined in the state forum. The Court notes that it advised plaintiff's attorney at a conference several months after oral argument on the instant motions that plaintiff should consider filing an action in the state court in order to protect the state law claim in the event the federal claims were dismissed.

Our decision not to exercise our pendent jurisdiction in this case is reinforced by the recent Third Circuit decision in *Weaver v. Marine Bank,* 683 F.2d 744 (3d Cir.1982). In *Weaver,* our Circuit stated that if a plaintiff's federal claims are subject to dismissal on a motion for summary judgment, the district court should ordinarily refrain from exercising jurisdiction over pendent state law claims in the absence of "extraordinary circumstances." 683 F.2d at 746, *citing Tully v. Mott Supermarkets, Inc.,* 540 F.2d 187 (3d Cir.1976); *See Lechtner v. Brownyard,* 679 F.2d 322, 327–28 (3d Cir. 1982). On the question of pendent jurisdiction, the present case is virtually identical to *Weaver,* since there may also be a state law problem here concerning the running of the statute of limitations, and since we have found that no cause of action has been stated under ERISA. We have also declined to exercise pendent jurisdiction over plaintiff's state law claim, for the reasons heretofore stated.

In *Weaver,* the Third Circuit went on to state "It is fortunate for the plaintiffs, however, that Pennsylvania's Judicial Code has provided for just such a situation as exists here," by providing for transfer of certain matters to the proper court of the Commonwealth. 683 F.2d at 746. The relevant portion of the enabling statute, 42 Pa.C.S.A. § 5103, reads as follows:

§ 5103. Transfer of erroneously filed matters

(a) *General rule.*—If an appeal or other matter is taken to or brought in a court or magisterial district which does not have jurisdiction of the appeal or other matter, the court or district justice shall not quash such appeal or dismiss the matter, but shall transfer the record thereof to the proper court or magisterial district of this Commonwealth, where the appeal or other matter shall be treated as if originally filed in the transferee court or magisterial district on the date first filed in a court or magisterial district.

(b) *Federal cases.*—Subsection (a) shall also apply to any matter transferred or remanded by any United States court for a district embracing any part of this Commonwealth. Except as otherwise prescribed by general rules, or by order of the United States court, such transfer may be effected by filing a certified transcript of the final judgment of the United States court and the related pleadings in a court or magisterial district of this Commonwealth. The pleadings shall have the same effect as under the practice in the United States court, but the transferee court or district justice may require that they be amended to conform to the practice in this Commonwealth. Section 5535(a)(2)(i) (relating to termination of prior matter) shall not be applicable to a matter transferred under this subsection.

Though in *Weaver* the Third Circuit, because of the need for prompt action in that case, remanded to the district court with directions that it transfer the pendent cases to the Court of Common Pleas, pursuant to this statute, the Court of Appeals stated

that it is ordinarily within the discretion of the district court to determine whether pendent claims should be transferred under § 5103. 683 F.2d at 748; *See Kuzma v. Lehman,* No. 81–4975, slip op. at 8 (E.D.Pa. October 20, 1982).

It would make little sense to transfer this action pursuant to § 5103 and *Weaver* if plaintiff's pendent state law claim is already the subject of an action filed in a court of the Commonwealth. Therefore, we will withhold this Court's judgment to dismiss plaintiff's state law claim until we are advised by the plaintiff that a similar action is not already pending in state court, and that the plaintiff intends to effectuate a transfer of the claim by filing in the state court a certified transcript of the final judgment of this Court, together with the related pleadings, pursuant to 42 Pa.C.S.A. § 5103. Plaintiff shall have ten (10) days from this date to so advise the Court; otherwise this Court will enter an order dismissing the pendent state law claim.

An appropriate order follows.

### ORDER

AND NOW, this 17th day of December, 1982, upon consideration of defendants' motion for summary judgment and plaintiff's responses thereto, and upon consideration of plaintiff's motion for partial summary judgment and defendants' responses thereto, this Court having held a hearing on these motions, and for the reasons stated in this Court's Memorandum of December 17, 1982,

IT IS HEREBY ORDERED:

1. Plaintiff's motion for partial summary judgment is DENIED.

2. Summary judgment is GRANTED on motion of defendants Cadence Industries Corporation et al. against plaintiff Rosann S. Berry on plaintiff's claims alleging violations of the Employee Retirement Income Security Act (ERISA), contained in paragraphs XII and XIII of plaintiff's amended complaint, and judgment is entered in favor of defendants Cadence Industries Corporation, Curtis Circulation Company, Equitable

Title Assurance Society of the United States, G.B. McCombs, Stuart J. Freedman, and Seymour Spiegel, and against plaintiff Rosann S. Berry, beneficiary of Robert E. Berry, on the claims set forth in paragraphs I–XIII of plaintiff's amended complaint.