Samuel WEAVER and Alice Weaver, Appellants,

v.

MARINE BANK, Appellee.

No. 80–1274.

United States Court of Appeals, Third Circuit.

June 30, 1982.

Andrew J. Conner, Dunn & Conner, Erie, Pa., for appellants.

Daniel L. R. Miller, Christine Hall McClure, McClure, Dart, Miller, Kelleher & White, Erie, Pa., for appellee.

Before GIBBONS, WEIS and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

This is a remand proceeding to consider the proper disposition of pendent state claims following a determination that federal securities law jurisdiction is lacking. A Pennsylvania statute provides that a federal court within the state may transfer erroneously filed cases to the state courts. We invoke that statute and direct that the pendent claims arising under Pennsylvania law be transferred to the state courts rather than be dismissed.

This action began when Samuel and Alice Weaver sued Marine Bank in federal court, alleging that the Bank violated § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and the Pennsylvania Securities Act, Pa.Stat.Ann. tit. 70, § 1–501. In addition, charges of common law fraud were included.

The district court originally entered summary judgment for the defendant, finding no cause of action under the federal securities laws. Since that basis for federal jurisdiction was absent and there was no diversity, the district judge dismissed the pendent state law claims. A divided panel of this court reversed the grant of summary judgment, 637 F.2d 157 (3d Cir. 1981). The Supreme Court in turn reversed this court's judgment, finding that the case did not involve a "security" within the scope of the federal statutes. —— U.S. ——, 102 S.Ct. 1220, 71 L.Ed.2d 409 (1982). Because it has been determined that plaintiffs did not have a federal cause of action, it now becomes necessary to address the state law claims that were initially dismissed by the district court.

The plaintiffs allege generally that they were defrauded by Marine Bank when it persuaded them to post their certificate of deposit as collateral for the obligations of a third party. The Weavers contend that the bank's activities contravened the state's Securities Act, which is governed by a one-year statute of limitations, Pa.Stat.Ann. tit. 70, § 1–101–704 (Purdon). In addition, they asserted claims under common law fraud theories to which either a two-year, 42 Pa.Cons.Stat.Ann. § 5524 (Purdon), or a six-year, id. at § 5527, statute of limitations period applies.

The suit in federal court was filed on May 4, 1979, and on July 20, 1979, three separate writs of summons were filed in the Court of Common Pleas of Erie County, Pennsylvania. These summonses, however, were not served on the defendant until March 1982, after the statute had expired— at least as to the state Securities Act count. We need not recite the details of the state litigation insofar as the limitations issue is concerned. It is enough to say that the bank has asserted that it will vigorously press its defense there that the claims are barred by the statute of limitations. Since the issue in that litigation is purely one of Pennsylvania law to be decided by that state's tribunals, we have no authority to pass on the question.

The relevant factor from our standpoint is that there is a possibility that the plaintiffs' cause of action presently in the state court may be barred by the statute of limitations. If so, then the only opportunity for the plaintiffs to litigate the merits of their claims lies in the pendent state law counts in the federal litigation.

■ A federal court may entertain state law counts arising out of a "common nucleus of operative fact" on which a federal cause of action is based, even though jurisdiction would not otherwise be present. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). In the case at hand, however, it has now been determined that there is no federal cause of action.

In *Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187 (3d Cir. 1976), we said that if the federal count is subject to dismissal on a motion for summary judgment, then the district court should "ordinarily refrain from exercising jurisdiction [over the state law claims] in the absence of extraordinary circumstances." *Id.* at 196 (citation omitted). This is because the primary justification for exercising pendent jurisdiction is missing if the substantial federal claim to which the state counts could be appended is no longer viable. In its absence then, the state claims should be dismissed. In *Tully*, we observed that the time already invested in litigating the state cause of action is an insufficient reason to sustain the exercise of pendent jurisdiction.

Under the circumstances of the case at hand, *Tully* would not support the federal court's retention of the remaining state claims. Yet, the prospect of the plaintiffs losing the opportunity to pursue their state cause of action because they erred in their interpretation of the Federal Securities Act is not a satisfying one. This is particularly true when the federal question—obviously one of substance—was not finally decided until it reached the Supreme Court.

It is fortunate for the plaintiffs, however, that Pennsylvania's Judicial Code has provided for just such a situation as exists here. When a matter is brought in a court which does not have jurisdiction, the Code permits the case to be transferred to the proper court of the Commonwealth. That provision is specifically made applicable to "any matter transferred or remanded by any United States court for a district embracing any part" of the Commonwealth. 42 Pa.Cons.Stat. § 5103(b) (Purdon).[1] The transfer is effected by filing a certified transcript of the final judgment of the United States court and the related pleadings in the appropriate state forum. Then the matter "shall be treated as if originally filed in the transferee court . . . on the date first filed in a [federal] court. . . ." *Id.* at § 5103(a). This provision clearly obviates the limitations problem that might otherwise confront the plaintiffs.

■ We recognize that such a transfer by a district court is an exercise of a power granted not by federal, but state, law. Jurisdiction of a federal court is dependent upon federal statutory authority, but that principle does not control the issue here.[2]

1. Section 5103 provides:
   (a) General rule.—If an appeal or other matter is taken to or brought in a court . . . which does not have jurisdiction of the . . . matter, the court . . . shall not . . . dismiss the matter, but shall transfer the record thereof to the proper court . . . of this Commonwealth, where the . . . matter shall be treated as if originally filed in the transferee court . . . on the date first filed in a court. . . ."
   (b) Federal cases.—Subsection (a) shall also apply to any matter transferred . . . by any United States court for a district embracing any part of this Commonwealth. Except as otherwise prescribed by general rules, or

by order of the United States court, such transfer may be effected by filing a certified transcript of the final judgment of the United States court and the related pleadings in a court . . . of this Commonwealth. The pleadings shall have the same effect as under the practice in the United States court, but the transferee court . . . may require that they be amended to conform to the practice in this Commonwealth. . . ."
   42 Pa.Cons.Stat.Ann. § 5103 (Purdon).

2. However, the Supreme Court has held, in the context of diversity jurisdiction, that a state statute that bars a person from utilizing a state court likewise precludes suit in the federal

Unquestionably, at the time the suit was filed in the district court, there was a colorable federal claim and pendent jurisdiction could properly be assumed. The question presented then is, whether the district court, once having acquired jurisdiction, can transfer the matter to the state court by virtue of a state enabling statute. We are persuaded that it can.

In a series of cases, the Supreme Court has held that a federal court may certify a question of doubtful state law to a state supreme court for resolution whenever the state has adopted such a procedure. In *Lehman Brothers v. Schein*, 416 U.S. 386, 389, 94 S.Ct. 1741, 1743, 40 L.Ed.2d 215 (1974), the Court commented approvingly on certification saying, "[t]hat path is open to this Court and to any court of appeals of the United States. We have, indeed, used it before as have courts of appeals." The Court noted that resort to the procedure, in addition to its practical advantages, also "helps build a cooperative judicial federalism." *Id.* at 391, 94 S.Ct. at 1744.

When use of certification was first suggested by the Court, it said that the Florida legislature,

"[W]ith rare foresight, has dealt with the problem of authoritatively determining unresolved state law involved in federal litigation by a statute which permits a federal court to certify such a doubtful question of state law to the Supreme Court of Florida for its decision.... Even without such a facilitating statute we have frequently deemed it appropriate, where a federal constitutional question might be mooted thereby, to secure an authoritative state court's determination of an unresolved question of its local law."

*Clay v. Sun Insurance Office Ltd.*, 363 U.S. 207, 212, 80 S.Ct. 1222, 1225, 4 L.Ed.2d 1170 (1960) (footnote and citations omitted). In *Zant v. Stephens*, — U.S. —, —, 102 S.Ct. 1856, 1859, 72 L.Ed.2d 222 (1982), the Court said, "We invoke that [Georgia certification] statute to certify the following question [of state law]...." *See also Aldrich v. Aldrich*, 375 U.S. 249, 84 S.Ct. 305, 11 L.Ed.2d 304 (1963); *Dresner v. City of Tallahassee*, 375 U.S. 136, 84 S.Ct. 235, 11 L.Ed.2d 208 (1963).

The federal court's reliance on state law as authority for certification has never been questioned, although doubt has been expressed that, absent a state enabling statute, the procedure would be permissible.[3] *See, e.g., England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411, 433–34, 84 S.Ct. 461, 475–76, 11 L.Ed.2d 440 (1964) (Douglas, J., concurring); *Turnbull v. Bonkowski*, 419 F.2d 104, 106 (9th Cir. 1969). *See also* 17 C. Wright, A. Miller, & E. Cooper, Federal Practice & Procedure § 4248 (1978).

It appears that the inherent power that is vested in the federal courts "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases," *Link v. Wabash Railroad Co.*, 370 U.S. 626, 630–31, 82 S.Ct. 1386, 1388–89, 8 L.Ed.2d 734 (1962), is the underlying federal basis that permits the court to elect to use such a state mechanism, if available. *See also,*

court. *Woods v. Interstate Realty Co.*, 337 U.S. 535, 538, 69 S.Ct. 1235, 1237, 93 L.Ed. 1524 (1949); *Angel v. Bullington*, 330 U.S. 183, 191–92, 67 S.Ct. 657, 661–62, 91 L.Ed. 832 (1947). This result is commanded by *Erie Railroad Co. v. Thompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and has been given effect in the context of pendent, *Hamilton v. Roth*, 624 F.2d 1204 (3d Cir. 1980), as well as diversity, jurisdiction, *Edelson v. Soricelli*, 610 F.2d 131 (3d Cir. 1979). Thus, state law can effectively "limit" the federal court's jurisdiction in the diversity setting.

3. When the authority for a federal court to certify a question to the state court, absent a state statute allowing the procedure has been questioned, it has not been from the perspective of the federal court's power to do so. Rather, the issue has been whether the state courts can constitutionally be compelled to answer a certified question if they lack constitutional or legislative authority to do so. *See* Kurland, "Toward A Co-operative Judicial Federalism: The Federal Court Abstention Doctrine," 24 F.R.D. 481, 490 (1959); 73 Harv.L. Rev. 1358, 1368–69 (1960); Wright, "The Federal Courts and the Nature and Quality of State Law," 13 Wayne L.Rev. 317, 325 (1967).

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947) (federal court has inherent power to transfer case to another district court). In the situation where a certifiable question of state law is raised, as well as the type of case presented here, the litigants would normally be remitted to the state court for resolution of the issue or case. But just as with certification, when the state permits the federal court to transfer the case, rather than leaving the parties to proceed on their own motion, a more orderly and efficient procedure is achieved.

The cooperative federalism that is so much a part of the certification process similarly inheres in the transfer statute enacted by Pennsylvania. It is designed to prevent the parties from being trapped by jurisdictional technicalities that prevent a resolution of disputes on the merits.[4] Obviously the limited and often uncertain jurisdiction of the federal courts poses a hazard to even an alert litigant. Pennsylvania's willingness to accept jurisdiction over cases improvidently brought in the federal courts represents an enlightened effort which deserves sympathetic consideration by this court. The Supreme Court's enthusiastic reception of the analogous certification procedure without requiring congressional authorization convinces us that we can take a similar stance with respect to the transfer provision here.

Ordinarily, we would return this matter to the district court to determine whether the pendent claims should be transferred. Because of the length of time which has already elapsed in this litigation, and because we envision no equitable considerations which would bar transfer,[5] we believe that prompt action on our part is required. Accordingly, we will remand this matter to the district court with directions that it transfer the pendent cases to the Court of Common Pleas of Erie County, Pennsylvania, pursuant to the terms of 42 Pa.Cons. Stat.Ann. § 5103.

SLOVITER, Circuit Judge, dubitante.

I.

The opinion of my colleagues that the district court could not exercise pendent jurisdiction in this case is predicated on this court's opinion in *Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187 (3d Cir. 1976). In *Tully* we held that because plaintiffs did not have standing to sue on a federal securities claim under Rule 10b–5, the district court should not have decided their pendent state claims charging defendants with breach of fiduciary duty, fraud and other state law claims. We stated that we based this holding on *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966):

> The *power* of the court to exercise pendent jurisdiction, though largely unrestricted, requires, at a minimum, a federal claim of sufficient substance to confer subject matter jurisdiction on the court. *Gibbs, supra*, 383 U.S. at 725, 86 S.Ct. 1130 [at 1138]. The substantiality of the federal claim is ordinarily determined on the basis of the pleadings. If it appears that the federal claim is subject to dismissal under F.R.Civ.P. 12(b)(6) or could be disposed of on a motion for summary judgment under F.R.Civ.P. 56, then the court should ordinarily refrain from exercising jurisdiction in the absence of extraordinary circumstances.

540 F.2d at 196 (emphasis in original). *Tully* has recently been relied upon by this

4. As the commentaries to the Pennsylvania Judicial Code note, the provision was intended to eliminate the need to file state court protective actions when a litigant is uncertain whether he has correctly filed in the federal forum—the precise problem presented in this case. *See* Pennsylvania Bar Association, Legislative Bulletin (May 17, 1978), reporting the proposal submitted by a Committee of the Pennsylvania Conference of State Trial Judges, chaired by

The Honorable Robert A. Doyle of the Court of Common Pleas of Allegheny County and a Pennsylvania Bar Association Special Committee on the Judicial Code.

5. The parties did not cite the provisions of the Pennsylvania Judicial Code in the district court, but we are confident that had they done so, the case would have been transferred, rather than dismissed.

court in *Lechtner v. Brownyard,* 679 F.2d 322 (3d Cir. 1982), where we held that because no private cause of action could be brought for a violation of the Federal Communications Commission Personal Attack Rule, the jury verdict for the plaintiff on the pendent claim for defamation under Pennsylvania law also must be vacated.

With great deference to my colleagues on the court when the *Tully* decision was rendered, it appears to rest on a misapprehension and misapplication of the Supreme Court's decision in *Gibbs.* In *Gibbs* the Court assumed the correctness of the district court's post-trial decision that the federal claim on which the verdict was entered, section 303 of the Taft-Hartley Act, was not cognizable. It then considered whether the district court properly entertained jurisdiction of the state claim as pendent. The Court held that the district court could properly have exercised jurisdiction because "the state and federal claims arose from the same nucleus of operative fact and reflected alternate remedies". 383 U.S. at 728, 86 S.Ct. at 1140. It expressly declined to hold that dismissal of the federal claim for reasons other than lack of subject matter jurisdiction required that the state claim verdict be vacated.

*Gibbs* establishes a two-step analysis for the federal court to follow in determining whether to exercise pendent jurisdiction. *See Financial General Bankshares, Inc. v. Metzger,* 680 F.2d 768, at 772 (D.C.Cir.1982). First, it must be determined whether a federal court has the *power* to consider a pendent state claim. Second, even if the federal court has power to consider the state claim, the court must determine in its *discretion* whether to exercise that power in any given case, guided by the factors discussed in *Gibbs* such as "judicial economy,

convenience and fairness to litigants." 383 U.S. at 726, 86 S.Ct. at 1139.

The *Tully* opinion may be read as holding that if a complaint could not have withstood a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), then the federal court lacked *power* to exercise pendent jurisdiction. In *Gibbs* the Court did state that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claim should be dismissed as well," 383 U.S. at 726, 86 S.Ct. at 1139, but that sentence appears in the paragraph directed to a discussion of the exercise of *discretion* as to whether or not to exercise pendent jurisdiction. It is the preceding paragraph in *Gibbs* which is directed to "pendent jurisdiction, in the sense of judicial *power.*" 383 U.S. at 725, 86 S.Ct. at 1138. In the paragraph discussing *power,* the Court stated "the federal claim must have substance sufficient to confer subject matter jurisdiction on the court." *Id.* This distinction was observed in *Lentino v. Fringe Employee Plans, Inc.,* 611 F.2d 474, 479 n.4 (3d Cir. 1979).

Deferentially, I suggest that the *Tully* court confused a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction with a Rule 12(b)(6) motion to dismiss for failure to state a claim. It is only if the former would have succeeded that the district court lacks *power* to entertain the pendent claim. Until the substantive legal issue presented in this case about the scope of the Securities Exchange Act was decided by the Supreme Court, plaintiffs' complaint raised a substantial federal claim and would not have been subject to dismissal under Rule 12(b)(1). *See Hagans v. Lavine,* 415 U.S. 528, 537–43, 94 S.Ct. 1372, 1379–82, 39 L.Ed.2d 577 (1974).[1]

---

1. In *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946) (citations omitted), the Court explained,

Jurisdiction ... is not defeated as respondents seem to contend, by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. For it is well settled that the failure to state a proper cause of action calls for

judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy. If the court does later exercise its jurisdiction to determine that the allegations in the com-

In *Gibbs*, the federal court had subject matter jurisdiction because the action was brought under section 303 of the Taft-Hartley Act. The fact that the claim was not cognizable did not deprive it of subject matter jurisdiction to hear the pendent claim, and the Supreme Court so held. In *Tully*, the district court had jurisdiction because the plaintiffs brought their claim under the Securities Exchange Act. Although this court subsequently held that the federal claim could not be maintained as a matter of law, I believe that conclusion did not deprive the district court of its subject matter jurisdiction, and therefore it should have been permitted to decide whether, in its discretion, to entertain the state law claim as pendent. Similarly in this case, plaintiffs brought their claim under the Securities Exchange Act. The Supreme Court has now held that the claim did not fall within that statute. That holding related to the viability of the federal claim, a Rule 12(b)(6) issue, and not to the subject matter jurisdiction of the district court.[2] As the majority recognizes, "at the time [plaintiffs'] suit was filed in the district court, there was a colorable federal claim . . . ." Majority at 746–747. Accordingly, as long as the district court had subject matter jurisdiction of the federal claim, it has *power* to decide the pendent claim provided the claims arise out of a common nucleus of operative facts. Whether the district court should exercise its power is a matter of its discretion, subject to the factors discussed in the *Gibbs* decision.

In *Gibbs*, the Court referred to one of the discretionary factors as follows: "Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." 383 U.S. at 726, 86 S.Ct. at 1139 (footnote omitted). In both *Tully* and *Lechtner*, the federal claims were not dismissed before trial. If the opinion in either case is read as barring the district court's exercise of discretion to retain pen-

dent jurisdiction because the federal claim could have been dismissed before trial, although in fact it was not, then the action of this court in both cases represents, to me, an unnecessary extension of *Gibbs*. I believe the *Tully* court's narrow view of the discretion vested in the district court is also evidenced by its failure to permit consideration of the "already substantial time devoted to the case and the expense incurred by the parties." 540 F.2d at 196. Although the *Tully* court stated it left an opening for the district court to exercise its pendent jurisdiction in "extraordinary circumstances", its rejection of litigation time as a relevant factor appears inconsistent with *Gibbs*. In contrast, in *Kavit v. A. L. Stamm & Co.*, 491 F.2d 1176, 1180 n.4 (2d Cir. 1974), Judge Friendly defined the similar term used by the Second Circuit ("exceptional circumstances") to include retention of jurisdiction "where dismissal of the pendent claims would otherwise sharply clash with the directive in *Gibbs* that pendent jurisdiction serve the ends of 'judicial economy, convenience and fairness to litigants.' 383 U.S. at 726, 86 S.Ct. at 1139." In this case, although the federal claim had not proceeded to trial, the issue of its cognizability was sufficiently in doubt so that this court divided on the issue, and the Supreme Court gave it plenary consideration. Plaintiffs should not be disadvantaged because of the uncertain state of the law at the time they filed their complaint. During the period while the legal issue was being determined, the statute of limitations may have, as defendant contends, barred plaintiffs' state law claims.

Therefore, my proposed disposition would be to remand this matter to the district court so that it could decide whether the federal and state claims arose out of a common nucleus of operative facts and if so, whether in light of the potential statute of limitations bar which arose during the litigation, it should exercise its discretion to

---

plaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction.

2. Indeed, the Supreme Court implicitly acknowledged the existence of such jurisdiction when it remanded to this court the pendent claims for our consideration.

retain the pendent claim. *See Lentino v. Fringe Employee Plans, Inc.*, 611 F.2d 474, 478–80 (3d Cir. 1979) (affirming district court decision to consider pendent state claim even though federal claim dropped on the morning of trial). The district court could also have chosen to retain jurisdiction until the state court decided the statute of limitations defense or until defendant waived that defense. *See Financial General Bankshares, Inc. v. Metzger*, 680 F.2d 768 at 778 (D.C.Cir.1982) (instructing district court not to dismiss pendent claim until defendant has waived statute of limitations defense in state suit for that claim). However, I recognize that the *Tully* decision as interpreted in *Lechtner* may preclude that result.

## II.

I also find highly questionable the majority's judgment remanding this case to the district court with directions that it transfer the pendent claims to the Court of Common Pleas of Erie County, Pennsylvania, pursuant to the terms of 42 Pa.Cons.Stat. Ann. § 5103. The majority states that it can do so because the Pennsylvania statute authorizes that procedure. I need cite no authority for the proposition that the power of federal courts is defined by Article III of the Constitution and the acts of Congress made pursuant thereto. No federal statute authorizes transfer of cases from a federal to a state court.

It has been consistently held that state statutes cannot limit federal jurisdiction. In *Railway Co. v. Whitton's Administrator*, 80 U.S. (13 Wall.) 270, 20 L.Ed. 571 (1871), the Court held that Wisconsin could not limit its wrongful death action to suits in its state courts. In holding that such actions could be brought in federal court if there was diversity, Justice Field stated, "In all cases, where a general right is thus conferred, it can be enforced in any Federal court within the State having jurisdiction of the parties. It cannot be withdrawn from the cognizance of such Federal court by any provision of State legislation that it shall only be enforced in a State court." *Id.* at 286. *See also, e.g., Terral v. Burke Construction Co.*, 257 U.S. 529, 42 S.Ct. 188, 66 L.Ed. 352 (1922) (holding unconstitutional a state statute which revoked a corporation's authority to do business in that state if the corporation used the federal courts).[3]

It follows that the state also cannot expand the jurisdiction of a federal court.[4] Could Pennsylvania by statute give the federal courts within its jurisdiction power to decide divorce and custody cases? Could it cede to federal courts jurisdiction over cases between Pennsylvania citizens? For reasons similar to those which compel a negative reply, I believe the majority is mistaken when it utilizes a Pennsylvania statute as authority for the power of a federal court to effect a transfer to a state court.

With regard to the majority's assertion of inherent power in the federal courts and its reliance on what it considers to be the analogous procedure of certification by federal courts of questions of doubtful state law to a state supreme court, again I believe that procedure is inapposite. A certification procedure merely provides a mechanism by which the substantive rule of law to be applied by federal courts in diversity cases can be ascertained from the highest court of the state. It neither adds nor subtracts from the power or authority of the federal courts.

I believe that the remand and transfer directed by the majority is a nullity. On the other hand, I also believe it is harmless. I agree with the majority that the Pennsylvania statute is an enlightened effort to preserve a litigant's claim on the merits when the suit has been improvidently brought in federal court. However, the Pennsylvania courts could effectuate the statutory policy by using the date of institution of the federal suit for purposes of

---

3. The cases referred to by the majority in its note 2 holding that the federal court sitting in diversity must apply state substantive limitations to maintenance of the suit are inapposite.

4. Cases touching upon the Eleventh Amendment, such as *Smith v. Reeves*, 178 U.S. 436, 20 S.Ct. 919, 44 L.Ed. 1140 (1900), raise a different issue.

the statute of limitations. The physical transfer of the case from the federal courts, for which there is no congressional authorization, is not necessary to effectuate the state law or policy.