LOVELL MANUFACTURING, A DIVISION OF PATTERSON–ERIE CORPORATION, Appellee,

v.

EXPORT–IMPORT BANK OF THE UNITED STATES and Aetna Casualty and Surety Company, Inc., Aetna Insurance Company, American Mutual Liability Insurance Company, Atlantic Mutual Insurance Company, Commercial Union Insurance Company, Continental Casualty Company, Continental Insurance Company, Employers Insurance of Wausau, Federal Insurance Company, Fireman's Fund Insurance Company, Hanover Insurance Company, Hartford Accident and Indemnity Company, Home Insurance Company, Liberty Mutual Insurance Company, Lumbermans Mutual Casualty Company, Reliance Insurance Company, Royal Indemnity Company, St. Paul Fire and Marine Insurance Company, Travelers Indemnity Company, and United States Fire Insurance Company, t/d/b/a Foreign Credit Insurance Association and Foreign Credit Insurance Association, individually and as agent of all of the above defendants, Appellants.

No. 87–3206.

United States Court of Appeals, Third Circuit.

Argued Sept. 14, 1987.

Decided March 31, 1988.

---

Richard K. Willard, Asst. Atty. Gen., J. Alan Johnson, U.S. Atty., Donald E. Lewis, Asst. U.S. Atty., Robert M. Hollis (argued), J. Christopher Kohn, Daniel E. Loeb, Irene Hirata, Attys., Civ. Div. U.S. Dept. of Justice, Washington, D.C., for appellant Export–Import Bank of the U.S.

Elliot E. Polebaum (argued), Henry A. Hubschman, Robert P. Parker, Fried, Frank, Harris, Shriver and Jacobson, Washington, D.C., for appellant Foreign Credit Ins. Ass'n and Its Member Companies.

James T. Marnen (argued), Knox, Graham, McLaughlin, Gornall & Sennett, Erie, Pa., for appellee Lovell Mfg.

Before BECKER and SCIRICA, Circuit Judges, and FARNAN, District Judge.*

* Honorable Joseph J. Farnan, Jr., United States District Judge for the District of Delaware, sitting by designation.

## OPINION OF THE COURT

BECKER, Circuit Judge.

This is an appeal from a grant of summary judgment in favor of plaintiff Lovell Manufacturing Co. ("Lovell") and against defendants Export–Import Bank of the United States ("Eximbank") and Foreign Credit Insurance Association ("FCIA"), in a suit for recovery on an export credit insurance policy issued jointly by Eximbank and FCIA. 654 F.Supp. 63. Eximbank was created by Congress as a government agency whose purpose is "to aid in financing and to facilitate exports and imports and the exchange of commodities and services between the United States ... and any foreign country or the agencies or nationals thereof." 12 U.S.C. § 635(a)(1) (1982). FCIA is an association of private insurance companies formed at the encouragement of Eximbank to support its statutory mandate of promoting United States exports; FCIA acts in conjunction with Eximbank in the issuance of export credit insurance. The appeal presents a threshold question of federal jurisdiction, *viz.*, whether a federal court has subject matter jurisdiction over a suit brought by an insured against a government agency and a private insurance association, when the claim against the agency was abandoned by the plaintiff very early in the proceedings and thus the agency's interest in the case is indirect at best. The district court did not address this issue; instead it addressed the merits and held that FCIA had impliedly waived a condition precedent to coverage and hence that FCIA was estopped from denying coverage for failure to comply with that condition.

In an earlier appeal of this case, we held that FCIA, and not Eximbank, bears sole responsibility for any potential liability that might be found on Lovell's insurance claim, and therefore that FCIA cannot benefit from the higher standard of estoppel generally afforded to a governmental entity. *See Lovell Mfg. v. Export–Import Bank of the United States,* 777 F.2d 894 (3d Cir.

1985) (*"Lovell I"*). *Lovell I* thus establishes that there is no direct governmental interest in this case. Without any such interest, we are unable to find any jurisdictional basis upon which to ground this cause of action. Although the parties assert that we have jurisdiction, we are duty bound to make an independent jurisdictional determination, regardless of the parties' positions. We do so, and conclude that the district court was without power to hear this case, hence we will remand to the district court with directions to remand to the state court.

### I.

The facts underlying the parties' dispute on the merits are extremely detailed, and most of them are unnecessary to a determination of the jurisdictional issue. We therefore set forth only those facts from the parties' joint stipulation necessary to an understanding of the jurisdictional question.

Lovell, a manufacturer of washing machine parts, purchased an export credit insurance policy issued jointly by FCIA and Eximbank. As we explained in *Lovell I,* 777 F.2d at 899, FCIA was organized at the encouragement of Eximbank to provide insurance against foreign commercial credit risks and to assist Eximbank in providing insurance against foreign political risks. FCIA provides these services pursuant to an agency agreement with Eximbank that clearly delineates the division of responsibility between the two organizations. *Id.* The agency agreement explains, and the insurance policy purchased by Lovell declares, that FCIA acts solely as an agent of Eximbank for purposes of *political* risk coverage, but that FCIA acts as a principal (accepting the risk for itself) in insuring *commercial* credit risks.[1] *Id.* at 899–901; J.A. at 44. Eximbank's sole responsibility for commercial risks stems from, and is limited to, a reinsurance agreement be-

---

1. As agent, FCIA's responsibilities include the issuing of policies, the collection of premiums and other administrative tasks.

tween Eximbank and FCIA.[2]  777 F.2d at 900.

Based on a series of communications between FCIA and Lovell, Lovell came to the mistaken belief that it had procured coverage from FCIA and Eximbank insuring sales up to $500,000 (and later raised to $750,000) per customer.  Not until Lovell attempted to collect on two claims for sales totaling over $770,000 in billings to one customer did Lovell discover that, in fact, it had failed to comply with a condition precedent of coverage—*viz.*, obtaining and maintaining an unconditional and irrevocable guarantee from the foreign customer's parent corporation—and thus that Lovell had only procured the basic coverage of $30,000 per customer.  When FCIA and Eximbank refused to pay on these two claims, Lovell filed suit in the Court of Common Pleas of Erie County, Pennsylvania on April 3, 1984, asserting its claims under the political risk coverage portion of the policy.  FCIA and Eximbank removed the case to the United States District Court for the Western District of Pennsylvania.

The parties almost immediately filed cross-motions for summary judgment, with Lovell affirmatively asserting estoppel as a basis for recovery.[3]  The district court denied the motions on November 9, 1984. Lovell then withdrew its political risk claim, choosing instead to proceed under the commercial risk portion of the policy.[4] The parties then stipulated to certain facts, and renewed their cross-motions for summary judgment.

On January 3, 1985, the district court granted summary judgment for Eximbank and FCIA, holding that defendants were entitled to the benefit of a higher government estoppel standard, which would require a showing of affirmative misconduct by defendants, a showing that could not be made in this case.  *See Lovell Mfg. v. Export–Import Bank of the United States*, 599 F.Supp. 961 (W.D.Pa.1985).  A panel of this court reversed.  *Lovell I*, 777 F.2d at 898–901.  Although FCIA and Eximbank argued that defendants should be entitled to the governmental estoppel standard because Eximbank's reinsurance obligations put the public fisc at risk, the panel disagreed, holding in language pertinent here:

> The reinsurance agreements only run between Eximbank and FCIA.  The fact that FCIA must now look to Eximbank for recoupment on Lovell's claim, pursuant to an entirely separate agreement to which Lovell was not a party, does not affect the duties owed to Lovell by FCIA under the insurance policies it issued. The obligation to Lovell resides with FCIA and not with Eximbank.  Moreover, it is FCIA's potential claim against the government under the reinsurance agreements, and not Lovell's, which is directed toward the public fisc; this is not the case before us.

*Id.* at 901.  The panel remanded the case to the district court, instructing it that "the estoppel question raised is to be judged by the traditional equitable estoppel principles and not according to the more stringent test applied when a government agency is involved."  *Id.*

2. Eximbank, rather than FCIA, does act as sole insurer of certain commercial credit risks specifically designated as "for the sole account of Eximbank."  However, such risks are not implicated by this case.  *Lovell I*, 777 F.2d at 899–900.

3. Lovell's theory was, as it continues to be on this appeal, that Lovell reasonably interpreted certain communications from FCIA as evincing an intent to grant the excess per-customer coverage, and that Lovell relied to its detriment on this reasonable understanding.  Essentially, Lovell argues that FCIA is estopped from denying coverage because FCIA lulled Lovell into a false sense of security and that Lovell would not have engaged in these risky foreign credit transactions if it had not reasonably believed (based on

FCIA's communications) that it had insurance coverage for these risks.  Lovell concedes, as it must, that any excess coverage that might have been issued had already expired by its own terms prior to the bulk of the unpaid-for shipments, yet Lovell argues nonetheless that such coverage was somehow reinstated by a purported retroactive renewal subsequent to the shipments.  Even assuming that an insured cannot rely to its detriment on an event which had not yet taken place, we note that at least some of the shipments took place after a disputed phone call in which Lovell claims, by affidavit, that it was told that it could expect retroactive renewal.

4. There is no explanation in the record for this strategic decision.

On remand, the parties submitted an extensive joint stipulation of facts and once again renewed their summary judgment motions. This time the district court granted Lovell's motion, holding that FCIA had impliedly waived the condition of coverage. This appeal by FCIA and Eximbank followed.

Appellants argue, *inter alia,* that as a matter of law Lovell could not have relied on insurance coverage that had lapsed prior to the unpaid-for shipments, that FCIA had not engaged in the affirmative misrepresentation that would be necessary for equitable estoppel, and that, at all events, disputed issues of fact remain regarding Lovell's purported reliance on the existence of coverage. However, we are without power to decide these questions, because the federal courts lack jurisdiction to hear this case.

## II.

Subject matter jurisdiction in the district court was based initially on 28 U.S.C. §§ 1331, 1337, 1349, 1441(a) and 1442(a)(1). However, once Lovell withdrew its political risk claim against Eximbank and proceeded solely against FCIA on the commercial risk claim, these jurisdictional bases became questionable.[5] We therefore asked the parties to submit supplemental memoranda on the question. Lovell, FCIA and Eximbank all argue, with varying degrees of force and certainty, that federal subject matter jurisdiction exists. For the reasons that follow, we disagree, and because a federal court is obliged to notice any jurisdictional defects and is powerless to hear any case over which it lacks jurisdiction, *see Bender v. Williamsport Area School District,* 475 U.S. 534, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986),[6] we hold that subject matter jurisdiction is lacking. We address each potential ground of jurisdiction in turn.

### A. § 1331—*"Arising Under" Jurisdiction*

■ FCIA and Eximbank urge strongly that this case is governed by federal common law, and is therefore subject to federal question jurisdiction under 28 U.S.C. § 1331 (1982).[7] We agree that a claim governed by federal common law will support an assertion of jurisdiction under § 1331. *See Illinois v. City of Milwaukee,* 406 U.S. 91, 100, 92 S.Ct. 1385, 1391, 31 L.Ed.2d 712 (1972). However, in view of this court's opinion in the first appeal, we do not be-

5. Given this potential defect, Lovell alleged in its brief on the merits that jurisdiction could be based on diversity of citizenship, 28 U.S.C. § 1332. *See* Brief for Appellee at 1. However, via subsequent memoranda, all parties now concede that diversity jurisdiction is lacking, because at least one member of FCIA is a Pennsylvania citizen, as is Lovell, and for diversity purposes an unincorporated association is a citizen of each of the states of which its members are citizens. *See Local No. 1 (ACA) Broadcast Employees of Int'l Bhd. of Teamsters v. Int'l Bhd. of Teamsters,* 614 F.2d 846, 853 (3d Cir.1980); 7C C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 1861, at 217 (2d ed. 1986); 3A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 17.25, at 17–259 (2d ed. 1986).

6. In *Bender,* the Supreme Court "restate[d] certain basic principles that limit the power of every federal court[:]

   Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto. *See, e.g., Marbury v. Madison,* 1 Cranch (5 U.S.) 137, 173–180, 2 L.Ed. 60 (1803). For that reason, every federal appellate court has a special obligation to "satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review," even though the parties are prepared to concede it. *Mitchell v. Maurer,* 293 U.S. 237, 244, 55 S.Ct. 162, 165, 79 L.Ed. 338 (1934). See *Juidice v. Vail,* 430 U.S. 327, 331–32, 97 S.Ct. 1211, 1215, 51 L.Ed.2d 376 (1977) (standing). "And if the record discloses that the lower court was without jurisdiction this court will notice the defect, although the parties make no contention concerning it. [When the lower federal court] lack[s] jurisdiction, we have jurisdiction on appeal, not of the merits but merely for the purpose of correcting the error of the lower court in entertaining the suit." *United States v. Corrick,* 298 U.S. 435, 440, 56 S.Ct. 829, 831, 80 L.Ed. 1263 (1936) (footnotes omitted).
   106 S.Ct. at 1331 (footnote omitted) (brackets in original). *See also Medlin v. Boeing Vertol Co.,* 620 F.2d 957, 960 (3d Cir.1980) ("It is the responsibility of this court to inquire, sua sponte, into the question of the subject matter jurisdiction of the district court.").

7. Lovell does not adopt this argument.

lieve that this is an appropriate case to apply federal law.

The Supreme Court has held that federal common law "governs questions involving the rights of the United States arising under nationwide federal programs." *United States v. Kimbell Foods,* 440 U.S. 715, 726, 99 S.Ct. 1448, 1457, 59 L.Ed.2d 711 (1979). In this case, however, federal interests and obligations are implicated only tangentially. The insurance policy makes FCIA, a private association, fully liable for any commercial risk claims. As we stated in the earlier appeal, any liability that Eximbank may incur stems solely from its status as a reinsurer pursuant to a separate contract between FCIA and Eximbank. *See Lovell I,* 777 F.2d 894, 901. We are bound by the law of the case, which is that the federal treasury is not directly affected by this case. *Cf. Miree v. DeKalb County,* 433 U.S. 25, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977) (where dispute had no direct effect on United States Treasury, state law applied, in spite of important government interests in the area of air safety); *General Engineering Corp. v. Martin Marietta Alumina,* 783 F.2d 352, 356 (3d Cir.1986) (federal common law applies only where "strong federal interests are involved, as in cases concerning the rights and obligations of the United States").

We note that this holding is consistent with the opinion of the one other court of appeals to have been faced with this issue. In *Nu–Air Manufacturing Co. v. Frank B. Hall & Co.,* 822 F.2d 987 (11th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1270, 99 L.Ed.2d 481 (1988), the court did not specifically address this question; the court simply applied state law, without discussion, to a suit against FCIA based on a commercial risk claim. *See* 822 F.2d at 990–94. Yet plainly the court was aware of the potential federal issues lurking beneath the surface, because it expressly "le[ft] open the question of the extent to which federal law governs insurance contracts issued on behalf of Eximbank." *Id.* at 995 n. 24. We read this as an implicit holding that state, rather than federal, law governs policies issued on behalf of FCIA. *See also Lance, Int'l v. Aetna Casualty &*

*Sur. Co.,* 264 F.Supp. 349 (S.D.N.Y.1967) (Mansfield, J.) (where there are no political risk claims against Eximbank, there is no federal interest in the litigation and therefore there is no federal question jurisdiction). Given that the government's interest in this case is insufficient to support a government estoppel standard, we believe it is similarly insufficient to justify applying federal common law.

Eximbank argues that federal law plainly would apply if the suit were against Eximbank directly; hence, Eximbank claims, the same law should apply in a suit against FCIA. Eximbank contends that it makes no sense to apply two different sets of laws to one integrated contract, but rather that one contract should be construed under one uniform set of laws. The argument has an appealing symmetry to it; however Eximbank cites no caselaw support for its position. In fact, the Supreme Court appears to have rejected the argument in *Miree,* when it held that the mere fact that the rights of the government under a contract would be controlled by federal law does not foreclose the use of state law to determine the rights of private litigants under the very same contract. 433 U.S. at 29–31, 97 S.Ct. at 2493–95; *see also Nu–Air Mfg. Co.,* 822 F.2d 987 (applying state law to suit against FCIA, even though court acknowledges that federal law might apply to suit against Eximbank on the same contract); *cf. Kimbell Foods,* 440 U.S. at 727–41, 99 S.Ct. at 1457–65 (even where federal law does apply, it need not be a uniform federal law; a single government program can be subjected to many different state rules). Therefore, we hold that jurisdiction does not lie under section 1331.

### B. *§ 1349—Federal Ownership*

■ Section 1349 of Title 28 states:
The district courts shall not have jurisdiction of any civil action by or against any corporation upon the ground that it was incorporated by or under an Act of Congress, unless the United States is the owner of more than one-half of its capital stock.

28 U.S.C. § 1349 (1982). Although this section could have been worded more clearly, we are confident that this statute creates jurisdiction, or at the very least allows jurisdiction pursuant to the *Pacific Railroad Removal Cases,* 115 U.S. 1, 5 S.Ct. 1113, 29 L.Ed. 319 (1885), over wholly-owned federal corporations like the Export–Import Bank. *See* 13B C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 3571 (2d ed. 1984). However, ever since Lovell dropped its political risk claim and chose to proceed solely against FCIA on a commercial risk theory, we believe that Eximbank became nothing more than a nominal defendant in this suit.[8] We are doubtful that jurisdiction based on the presence of a federally-owned corporation can lie in a case where the federally-owned corporation has no direct interest in the litigation.

Moreover, even if Eximbank is a true defendant (with some direct interest in this case), our power to hear the claim against FCIA would stem solely from pendent-party jurisdiction, because we can find no independent jurisdictional basis to justify hearing this claim. It is beyond peradventure that a federal court has the power to hear a state law claim when it is so integrally related to a federal claim that the two ought to be brought together in one suit. *See UMW v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). However, *Gibbs* and its progeny merely allow a court to entertain additional pendent claims against a defendant who is already party to the suit; the caselaw is substantially less clear about the power of a federal court to entertain pendent state law suits against additional parties who have no independent basis for their presence in federal court.

In *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), the Supreme Court ruled that a federal court could not exercise jurisdiction over a state law claim against a county when the only other basis for federal jurisdiction was a civil rights suit against a county official under 42 U.S.C. § 1983. At the very least, the *Aldinger* case plainly stands for the proposition that the doctrine of pendent-party jurisdiction should be applied with selective care. *See, e.g., id.* at 17, 96 S.Ct. at 2421 ("Resolution of a claim of pendent-party jurisdiction ... calls for careful attention to the relevant statutory language."); 13B Wright, Miller & Cooper, *supra,* § 3567.2, at 156 & cases cited at n. 30; *cf. Ayala v. United States,* 550 F.2d 1196 (9th Cir.1977) (construing *Aldinger* as not inconsistent with Ninth Circuit precedent holding that pendent-party jurisdiction violates Article III), *cert. dismissed,* 435 U.S. 982, 98 S.Ct. 1635, 56 L.Ed.2d 76 (1978). Moreover, *Aldinger* plainly imposes the sensible requirement that, to the extent pendent-party jurisdiction exists at all, a court should not exercise that jurisdiction when to do so would constitute an end-run around a congressional intent to limit access to federal court.[9] *See, e.g.,* 427 U.S. at 18, 96 S.Ct. at 2422 ("a federal court must satisfy itself not only that Art. III permits [pendent-party jurisdiction], but that Congress in the statutes conferring jurisdiction [on the anchoring claim] has not expressly or by implication negated its existence"); *United States ex rel. Hoover v. Franzen,* 669 F.2d 433, 438–45 (7th Cir. 1982) (court must look to underlying jurisdictional grant to determine whether to exercise pendent party jurisdiction); *accord Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 373, 98 S.Ct. 2396, 2402, 57 L.Ed.2d 274 (1978).

Although we have never ruled directly on the availability of pendent-party jurisdiction in this circuit after *Aldinger,* several cases have suggested strongly that such power may not exist at all here.[10] *See, e.g.,*

---

**8.** Indeed, no reason appears why Eximbank has not been formally dismissed from this case.

**9.** In *Aldinger,* the Court refused to exercise pendent-party jurisdiction over the county defendant largely because the Court found a congressional intent in § 1983 to make available a federal forum for civil rights suits *only* against

"person[s]" acting under color of state law, which at that time was interpreted to include county officials but not counties themselves. *See* 427 U.S. at 16–19, 96 S.Ct. at 2421–23.

**10.** Prior to *Aldinger,* pendent-party jurisdiction may have been available in the Third Circuit.

*Wilkes–Barre Publishing Co. v. Newspaper Guild,* 647 F.2d 372, 376 (3d Cir.1981), *cert. denied,* 454 U.S. 1143, 102 S.Ct. 1003, 71 L.Ed.2d 295 (1982) ("the pendent state law claim against [defendants who were not party to the disputed collective bargaining agreement] can be entertained *only if* the complaint alleges some other nonfrivolous *independent* basis for district court jurisdiction over them") (citing *Aldinger*) (emphasis added); *Kerry Coal Co. v. UMW,* 637 F.2d 957, 965 (3d Cir.), *cert. denied,* 454 U.S. 823, 102 S.Ct. 109, 70 L.Ed.2d 95 (1981); *but cf. Sansom Committee v. Lynn,* 735 F.2d 1535, 1549–52 (3d Cir.1984) (Garth, J., dissenting) (*Aldinger* counsels against an expansive application of pendent-party jurisdiction, however the power is available in certain limited circumstances, depending in part on the specific federal jurisdictional statute), *cert. denied,* 469 U.S. 1017, 105 S.Ct. 431, 83 L.Ed.2d 358 (1984). However, in spite of our strong reservations about the availability of the doctrine, we need not rule definitively on that question here, because we have no doubt that, to the extent pendent-party jurisdiction might be available in certain limited circumstances, this case is not an appropriate case to apply it.

The federal claim justifying presence in federal court plainly does not predominate this action; the case is predominantly, if not exclusively, a state law claim against an association of private insurance companies. *Cf. UMW v. Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139 ("if it appears that the state issues substantially predominate ... the state claims may be dismissed without prejudice"); *see Latch v. TVA,* 312 F.Supp. 1069 (N.D.Miss.1970) (where jurisdiction over state law claim against TVA is premised solely on TVA's federal incorporation and ownership, court will not exercise pendent-party jurisdiction over a private defendant, because there are no federal law issues in the case) (pre-*Aldinger*). This entire case could be brought in state court, and thus a remand to state court will not force plaintiff to split its claims, engendering piecemeal litigation. *Cf. Aldinger,* 427

U.S. at 18, 96 S.Ct. at 2422 ("When the grant of jurisdiction to a federal court is exclusive ... the argument of judicial economy and convenience can be coupled with the additional argument that *only* in a federal court may all of the claims be tried together.") (emphasis in original) (footnote omitted); *Kuehner v. Schweiker,* 717 F.2d 813, 828 n. 17 (3d Cir.1983) (Becker, J., concurring) (pendent party jurisdiction appropriate where the federal courts have exclusive jurisdiction over the federal claims and the case could not be brought in state court), *vacated on other grounds,* 469 U.S. 977, 105 S.Ct. 376, 83 L.Ed.2d 312 (1984).

Finally, just as jurisdiction in *Aldinger* was based on what was viewed then as a limited grant of jurisdiction enabling federal courts to hear suits against municipal officials but not against the municipalities themselves (42 U.S.C. § 1983, together with its jurisdictional counterpart, 28 U.S.C. § 1343(a)(3)), so too is jurisdiction here premised on a limited grant of jurisdiction over particular parties, *viz.,* federally-owned corporations. Moreover, Congress has expressed an intent in section 1349 to limit that jurisdictional grant. *See* 28 U.S.C. § 1349 (jurisdiction shall not be based on mere federal incorporation, unless United States owns majority of capital stock). The court in *Aldinger* plainly frowned upon pending a state law claim against a new party to a federal claim that is premised solely on a jurisdictional grant over a limited number of specific parties. *Cf. Cheltenham Supply Corp. v. Consolidated Rail Corp.,* 541 F.Supp. 1103, 1107 (E.D.Pa.1982) (no pendent-party jurisdiction when jurisdiction over the underlying federal claim is based on a statutory grant of jurisdiction over certain specific parties— 49 U.S.C. § 11707, which grants jurisdiction over certain rail carriers—rather than over certain types of claims) (interpreting *Aldinger*).

We believe this admonition is particularly apposite here, because Congress has plainly shown its desire, in § 1349, to cabin the power of federal courts to hear claims

*See Smith v. Spina,* 477 F.2d 1140, 1145 (3d Cir.1973).

based on the mere presence of a federally-incorporated party. *Cf. People ex rel Cosentino v. Federal Reserve Bank of Chicago,* 579 F.Supp. 1261 (N.D.Ill.1984) (statute granting federal jurisdiction over claims against federally-chartered banks is a narrow and limited jurisdictional grant and therefore cannot be used to "anchor" a state law claim against a pendent party). We therefore hold that there is no federal subject matter jurisdiction under section 1349.

### C. § 1442(a)(1)—Removal by Federal Officers

■■■■ Section 1442 of Title 28 states, in pertinent part:

(a) A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1) (1982). Although the courts and commentators appear to split on the interpretation of this section in terms of whether agencies, as opposed to persons, can remove under this provision, *compare* 14A C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 3727, at 457 (2d ed. 1985) ("It is not clear whether federal agencies themselves may remove under Section 1442[, however a] broad interpretation of the statute clearly is justified in terms of the intent of Congress to protect the valid exercise of federal authority....") *with* 1A J. Moore & B. Ringle,

*Moore's Federal Practice* ¶ 0.164[1], at 382–84 (1987) ("the civil suit or criminal prosecution must be against the officer or employee.... A suit against a government corporation ... is not removable under § 1442(a)(1)" (footnotes omitted)), it is clear to us that a fair reading of the statute only allows officers, and not agencies, to remove cases to federal court. *See, e.g., Lance, Int'l v. Aetna Casualty & Sur. Co.,* 264 F.Supp. 349 (S.D.N.Y.1967) (Eximbank cannot remove under § 1442 because it is not an "officer of the United States" (citing legislative history, caselaw and plain language)).

In spite of sound policy arguments presented by FCIA and Lovell in favor of allowing federal agencies like Eximbank to have an automatic right of removal, we cannot read a statute to say what it does not say, and we think it plain from the punctuation of the sentence and the use and placement of the word "him" that this statute merely allows removal by "any officer ... or person acting under him." 28 U.S.C. § 1442(a)(1). Eximbank can make no claim to be either.[11]

Moreover, even if Eximbank could remove this case under § 1442 as an "agency [of the United States]," we do not believe that would be sufficient to bring the claim against *FCIA* into federal court. It is probably true that, in the ordinary case, a party exercising its right of removal under § 1442 can remove the entire "civil action" and not just the suit against the removing party. *See* 14A Wright, Miller & Coooper, *supra,* § 3727, at 462. This, however, is not the ordinary case. Eximbank's interest in this litigation is tangential, at best, and we do not believe that interest is sufficient to justify the presence of a non-federal suit in federal court.[12]

Lovell, however, presents a more intriguing argument under § 1442. Put brief-

---

11. For a list of the many courts that have addressed and divided upon this question, see 14A Wright, Miller & Cooper, *supra,* § 3727 at 457–58 nn. 27–31, and 1A Moore & Ringle, *supra,* ¶ 0.164[1] at 382 n. 17. We note in passing that the sheer weight of authority plainly favors our narrower reading of the statute.

12. Eximbank's interest in the litigation was direct and substantial at the time of removal. However, that alone cannot support federal jurisdiction over the state law claim against FCIA, given subsequent events. *See* the discussion of *Weaver v. Marine Bank,* 683 F.2d 744 (3d Cir. 1982), and its progeny, *infra.*

ly, Lovell contends that FCIA is a "person acting under" a federal officer, and therefore entitled to remove in its own right. However, even if this once were true, because FCIA merely acted as Eximbank's agent (rather than as principal) in the sale of *political* risk insurance, the political risk claim was dropped by Lovell several months into the litigation, leaving only the *commercial* risk claim, for which FCIA is individually responsible. As the first panel correctly noted,

> it is *only* with respect to [political risks, sovereign transactions, and commercial credit risks issued for the sole account of Eximbank] that FCIA functions as the agent of Eximbank. In all other respects, FCIA is, by the very terms of the agreement, the sole insurer of commercial credit risks.

*Lovell I*, 777 F.2d at 900 (emphasis added).[13]

Lovell, however, cites several older Third Circuit cases for the proposition that our determination of jurisdiction should be based solely on the basis of the pleadings, and not on subsequent events. Under this rule, Lovell argues, the district court had jurisdiction because at the time of removal Lovell was still proceeding on its political risk claim and was thus suing FCIA as an agent of Eximbank and its officers (and thus FCIA was then a "person acting under" a federal officer). *See* Lovell's Supplemental Memorandum of Oct. 27, 1987, at 11 (citing *La Chemise Lacoste v. Alligator*

*Co.*, 506 F.2d 339, 343–44 (3d Cir.1974), *cert. denied*, 421 U.S. 937, 95 S.Ct. 1666, 44 L.Ed.2d 94 (1975); *Elberti v. Kunsman*, 376 F.2d 567, 568 (3d Cir.1967); and *Lindquist v. Dilkes*, 127 F.2d 21, 25 (3d Cir. 1942)); *see also* 14A Wright, Miller & Cooper, *supra*, § 3739, at 582, § 3721 at 213, § 3722 at 278 (jurisdiction is based on the facts at the time of removal).

■ We are uncertain that these cases stand for the broad proposition for which Lovell cites them. However, regardless of what they once might have stood for, and regardless of the merit of these principles elsewhere, plainly they do not reflect recent Third Circuit jurisprudence. As Lovell itself concedes, later cases clearly hold that once all federal claims have been dropped from a case, the case simply does not belong in federal court.[14] *See Shaffer v. Bd. of School Directors*, 730 F.2d 910 (3d Cir.1984); *Shaffer v. Bd. of School Directors*, 687 F.2d 718, 722–23 (3d Cir. 1982), *cert. denied*, 459 U.S. 1212, 103 S.Ct. 1209, 75 L.Ed.2d 449 (1983); *Weaver v. Marine Bank*, 683 F.2d 744 (3d Cir.1982); *see also UMW v. Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139 ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."). Judge Sloviter has aptly described the problems with this rule. *See Weaver*, 683 F.2d at 748–52 (Sloviter, J.,

**13.** Moreover, it is not at all clear that a mere agency-principal relationship between FCIA and Exim would be sufficient to support jurisdiction, even if such a relationship did continue to exist here. After all, the purpose of § 1442 removal is to protect federal officials from unfriendly state forums, to allow the official to raise defenses (such as immunity) arising out of his official duties, and to insure an impartial setting "free from local interests or prejudice." *Arizona v. Manypenny*, 451 U.S. 232, 242, 101 S.Ct. 1657, 68 L.Ed.2d 58 (1981). The "right of removal is absolute *for conduct performed under color of federal office*." *Id.* (emphasis added). It is doubtful whether removal here would serve any of these purposes. Furthermore, we are uncertain whether FCIA could be said to have been "acting under color of [a federal] office" within the meaning of § 1442(a)(1) and *Manypenny. See also Willingham v. Morgan*, 395 U.S. 402, 89 S.Ct. 1813, 23 L.Ed.2d 396

(1969), giving an expansive reading to the right of federal officials to remove under § 1442, but noting that "[f]ederal jurisdiction rests on a 'federal interest in the matter,' the very basic interest in the enforcement of federal law through federal officials." 395 U.S. at 406, 89 S.Ct. at 1816 (citation omitted). The Court went on to explain that removal is appropriate whenever federal officers "can raise a colorable defense arising out of their duty to enforce federal law." *Id.* at 406–07, 89 S.Ct. at 1815–16. That is not this case.

**14.** Lovell requests in banc reconsideration of this recent line of cases. *See* Lovell's Supplemental Memo of October 27, 1987 at 12–13. Such consideration would require a vote of the majority of active circuit judges. *See* Internal Operating Procedures of the Third Circuit, Chapter 8.

*dubitante* ). However, we, of course, are bound by it.

 Absent "extraordinary circumstances," a district court in this circuit is powerless to hear claims lacking an independent jurisdictional basis, and "time already invested in litigating the state cause of action is an insufficient reason to sustain the exercise of pendent jurisdiction." *Weaver*, 683 F.2d at 746. These principles have been applied to a removal action, as well as to original federal actions. *See Cooley v. Pa. Housing Fin. Agency*, 830 F.2d 469, 476 (3d Cir.1987) (finding that the expiration of the state statute of limitations constitutes sufficient "extraordinary circumstances" to justify retaining jurisdiction over a removed state claim, even after the federal claim was dismissed on summary judgment[15]).

Moreover, we note that to the extent a black-letter rule ever existed, precluding a court from relying on post-removal events to determine whether to exercise pendent jurisdiction, the Supreme Court clearly did not feel bound by it in *Carnegie–Mellon University v. Cohill*, —— U.S. ——, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988).[16] In summary, we therefore hold that there is no jurisdiction under 28 U.S.C. § 1442(a)(1).

### III.

Unable to find any basis for federal subject matter jurisdiction over this dispute, we hold reluctantly (in view of the lengthy procedural history of this case in federal court) that the district court had no power to hear the case. We therefore will remand this case to the district court with instructions to remand this case to the Court of Common Pleas for Erie County, Pennsylvania. *See Carnegie–Mellon*

*University v. Cohill*, —— U.S. ——, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *see also* 42 Pa.Cons.Stat.Ann. § 5103(b)(1) (Purdon Supp.1987) (allowing transfer of matters improperly filed in federal court to appropriate state court, and excusing any statute of limitations problems arising from improper filing).

---

15. Assuming Pennsylvania's six-year statute of limitations applies here, *see* 42 Pa.Cons.Stat. Ann. § 5527 (Purdon Supp.1987), it has not yet expired in our case. Shipments that have not been paid for were made from May 1 to December 27, 1982, and from January 26 to February 6, 1983. Lovell submitted its notice of claim to FCIA in October, 1983. Moreover, Pennsylvania's savings statute, 42 Pa.Cons.Stat.Ann. § 5103(b)(1) (Purdon Supp.1987), no doubt will protect Lovell from dismissal on statute of limi-

tations grounds even if the limitations period has expired.

16. In *Cohill*, the Court approved a remand of a removed state law claim to state court, based on a voluntary dismissal by the plaintiffs of the federal cause of action (to which the state claim had originally been pendent) *subsequent* to the commencement of proceedings in the district court. 108 S.Ct. at 622.